SUSANNE L. EHMER, Respondent, *v.* TITLE GUARANTEE AND TRUST COMPANY, Appellant.

1. CORPORATION AS CONVEYANCER. A corporation organized for the purpose of examining and guaranteeing titles to real estate, which, in all matters relating to conveyancing and searching titles assumes to discharge the same duties as an individual conveyancer or attorney, is subject to the same responsibilities, and its duty to its employer is governed by the principles applicable to attorney and client.

2. WRONG PROPERTY INSERTED IN DEED, BY NEGLIGENCE OF CORPORATION ACTING AS CONVEYANCER FOR PURCHASER — DAMAGES. If a conveyancing company, employed to conduct the purchase of a certain house, procures from the owner of that and the adjoining house, and delivers to its employer, a deed which, by its negligence, covers the adjoining house instead of the one intended by both the grantor and grantee, the deed does not constitute a good conveyance, and the duty of reducing the damages from the company's negligence, by selling the deeded premises for the highest price obtainable, does not devolve upon the grantee on discovering the mistake in the deed.

3. DAMAGES. In such case, the value of the house erroneously inserted in the inoperative deed, as compared with the value of the house intended to be sold and purchased, is of no consequence upon the question of damages.

4. MEASURE OF DAMAGES. If the grantee of such erroneous deed procures its reformation and, on obtaining the house which the conveyancing company had been employed to purchase subject to a certain mortgage, of the same amount as a mortgage upon the house erroneously inserted in the original deed through the company's negligence, finds it incumbered by an additional mortgage, he is entitled, on being evicted through a foreclosure of such additional mortgage, the grantor being insolvent, to recover from the conveyancing company, as damages for its negligence, the sum paid on the purchase price, being less than the amount of the additional mortgage.

*Ehmer* v. *Title Guarantee & Trust Co.*, 89 Hun, 120, affirmed.

(Submitted April 28, 1898; decided May 10, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second judicial department, entered August 9, 1895, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages alleged to have been sustained through the negligence of defendant in conducting a purchase of real estate for the plaintiff.

The facts, so far as material, are stated in the opinion.

*Edward E. Sprague* for appellant.  The court erred in charging the jury that plaintiff was entitled to recover, if at all, the amount paid by her upon the purchase of the house, with interest from the date of eviction, if the property was then worth as much as that sum above the incumbrances. (*Jenks* v. *Quinn*, 137 N. Y. 223 ; *Hynnes* v. *Esty*, 133 N. Y. 342 ; *Quinn* v. *Van Pelt*, 56 N. Y. 417 ; Weeks on Attorneys, § 293.)  The court erred in refusing to charge that it was plaintiff's duty, upon discovering the mistake, to make the resulting damage as light as possible, and to sell the premises conveyed to her for the highest price obtainable, and thus reduce the damages ; and, again, that plaintiff having made no effort to do so, was chargeable in this action with the reasonable value of the premises ; and, again, that in the absence of evidence that there was a difference in value between the two houses, plaintiff could recover only nominal damages.  (*Hamilton* v. *McPherson*, 28 N. Y. 72, 77 ; *Dillon* v. *Anderson*, 43 N. Y. 231 ; *Allen* v. *McConihe*, 124 N. Y. 342, 347.)  The conduct of plaintiff in procuring a reformation of her deed was a conclusive abandonment of her claim to the rule of damages adopted by the court.  (*Fowler* v. *Bowery Sav. Bank*, 113 N. Y. 450 ; *Taussig* v. *Hart*, 49 N. Y. 301 ; *Second Nat. Bank* v. *Burt*, 93 N. Y. 233 ; *Terry* v. *Munger*, 121 N. Y. 161 ; *Vail* v. *Reynolds*, 118 N. Y. 297 ; *Yeomans* v. *Bell*, 151 N. Y. 230.)

*Josiah T. Marean* for respondent.  Plaintiff was entitled to recover.  (1 Sedg. on Dam. §§ 201–228.)  The burden was on defendant to show that the alleged avoidable damages, claimed to have been the result of the plaintiff's course in procuring reformation of the deed, were negligently incurred.  (1 Sedg. on Dam. §§ 221, 227 ; *Hamilton* v. *McPherson*, 28 N. Y. 72.) Defendant's requests to charge were properly refused.  (1 Sedg. on Dam. § 228 ; *Bevier* v. *D. & H. C. Co.*, 13 Hun, 254 ; *Seward* v. *N. Y., etc., Tel. Co.*, 41 N. Y. 544, 565.)

O'BRIEN, J.  The defendant is a domestic corporation organized for the purpose, among other things, of examining

and guaranteeing titles to real estate for hire and profit. In all matters relating to conveyancing and searching titles it holds itself out to the public and assumes to discharge the same duties as an individual conveyancer or attorney, and hence in such transactions its duties and responsibilities are the same. In July, 1871, the plaintiff entered into a verbal contract with the owner for the purchase of the house and lot No. 125 Fourth avenue in Brooklyn for $4,000 in cash, subject to a mortgage of $9,000 then existing upon the property. She paid on this verbal arrangement $50. She then employed the defendant to take charge of the matter for her and to draw a proper contract, search the title and secure for her the deed. The employment was accepted by the defendant, and it undertook to manage the transaction for her from this point to the final consummation of the purchase. The obligations and duties that the parties assumed towards each other were, therefore, similar in all respects to those growing out of the relation of attorney and client in transactions of the same character, and hence the case must be determined upon the same principles.

It seems that the defendant had in its service competent lawyers and conveyancers through whom it transacted such business for the public for a proper reward. One of these persons, acting as the servant and agent of the defendant, and who was familiar with the property, called upon the plaintiff, procured from her a description of the property with reference to its location, which she gave verbally as near as she could, and then drew a written contract for the purchase of the house between herself and the owner. She then paid the owner $500 more under the advice and direction of this agent of the defendant, and paid to the agent the balance of the purchase price, $3,450, which he gave to the owner in fulfillment of the contract.

It appears that the agent, instead of describing the house and lot that the plaintiff intended to buy and the owner to sell in the contract of sale which the parties signed under his direction, described another house and lot in the same block

and of the same character, No. 123 Fourth avenue.  This mistake seems to have occurred in consequence of the description which the owner gave to the scrivener in which the house was located a certain distance from a street corner.  The conveyancer accepted the erroneous description without making any investigation himself, though he was in possession of all the facts, and though he knew that the plaintiff relied upon him to procure for her a good title to the house she intended to buy.  The error in the contract entered into the deed, and the plaintiff, supposing that she had purchased and paid for the house No. 125, moved into it.  The defendant delivered to her with the deed a contract or policy of title insurance assuring her against all defects in the title or incumbrances thereon, except the $9,000 mortgage.  There is no dispute about the fact that all these papers referred to the wrong house, and not to the house of which she had taken possession, and which she intended to purchase and the owner to sell.  A few months afterward the plaintiff discovered the error in the contract and deed, and brought an action against the owner to reform the same by inserting the property No. 125 in place of the property No. 123, in which action she succeeded.  But she also found herself confronted with another difficulty, in that No. 125 was incumbered by a first mortgage of $9,000 and a second mortgage of $5,000.  The latter mortgage was foreclosed and the house sold, and the plaintiff evicted.  The owner, who had given her the deed, was insolvent, and, therefore, an action against him for breach of the contract would not be productive to repair the loss.  The plaintiff never took possession of No. 123 or exercised any acts of ownership over it, but brought this action to recover the $4,000 which she had paid.  The jury found a verdict in her favor for the amount, and interest, and, hence, the fact of negligence on the part of defendant is established.

The only question of law that arises upon the appeal is with respect to the legal rule or measure of damages, and that question is raised by the following requests of the defendant's counsel to charge the jury, which were refused by the court,

and exceptions taken : " 1. That it was the duty of the plaintiff, upon discovering the mistake in the description, to take active measures to make the resulting damage as light as possible, and to sell the premises actually conveyed to her for the highest price obtainable, and thus reduce the damages. 2. That the defendant is not liable for more than nominal damages, in the absence of any evidence that there was a difference in the value between the two houses. 3. That the plaintiff, having made no effort to reduce her damages by selling the premises conveyed to her, is chargeable, as between her and the defendant, with the reasonable value of these premises."

It will be seen that the first and third propositions are based upon the assumption that the plaintiff should have sold No. 123, the house covered by the deed as originally given by the owner, to the end that the damages recovered, or for which the defendant should be made liable, might be made as light as possible. (*Hamilton* v. *McPherson*, 28 N. Y. 72–77 ; *Dillon* v. *Anderson*, 43 N. Y. 231 ; *Allen* v. *McConihe*, 124 N. Y. 342 ; *Jenks* v. *Quinn*, 137 N. Y. 223 ; *Hymes* v. *Esty*, 133 N. Y. 342.) Without attempting to ascertain whether that principle has any application to actions of this character, it is clear that it cannot be applied to the facts of this case, since the plaintiff never owned or could sell No. 123, although she had a deed of it from the owner. That deed, however, covered a piece of real estate that neither of the parties to it intended to convey. The purpose of a deed, like all other contracts, is to carry out the intention of the parties. If by reason of mistake or fraud it does not fulfill its purpose, or expresses something which neither of the parties intended to be bound by, it is not in any legal or proper sense a conveyance, but remains, subject to be set aside or reformed. In this case it was simply an instrument, not conveying good title to anything, since it was open to attack by either the grantor or grantee, and to their heirs or assigns, except, possibly, so far as the Recording Act would make it good, which is a consideration not worth referring to in the case. Her title to this particular house was liable at any time to be questioned

and set aside by her grantor, since the deed was a mistake as to him as well as to her. Any purchaser who had agreed to buy it could, on discovery of the facts, refuse to take it, or, if the purchase had been completed, could sue her upon her covenants. A deed, founded upon a mistake as to the identity of the property sold or purchased, is for all the purposes of the question now in hand no title at all. It cannot, therefore, be asserted that the plaintiff owed any active duty to the defendant to sell a house that she did not, in any legal sense, own and could not convey. She had a paper in the form of a deed covering lands which she never intended to buy, and which the grantor in the paper never intended to sell. It is not apparent, under these circumstances, how she could be required to deal with the property described in it, or how she could safely do so. It is no answer to this to say that the house described in this paper was as good a house, or even a better house, than the one she agreed to purchase and the owner to sell. The difficulty with the whole argument is that it assumes that the plaintiff took good title to something through an instrument resting upon a mistake, when in truth she got nothing in the legal sense until the instrument was reformed and made to conform to the intention of the parties.

The second proposition in the request is based on the same error and assumption. But in addition to that it ignores the fact that what the plaintiff purchased, and intended to purchase, was the equity of redemption in realty incumbered by a $9,000 mortgage. What she finally obtained, through the deed as reformed, was a house of the same character incumbered by $14,000. It cannot be said, under such circumstances, that there was no proof that the alienable interest in the two houses was different, if such proof was of any consequence. Just why the plaintiff procured the deed to be reformed is not apparent, unless she considered No. 125 more desirable than No. 123, and was ignorant of the existence of the second mortgage on the former. But the mere fact that there was no difference in the value of the two houses irrespective of the incumbrances, was not pertinent to the issue,

and would only tend to mislead the jury. The value of No. 123 was of no consequence, since the plaintiff did not buy it and never really owned it. What the plaintiff really acquired through the defendant's services and the action to reform the deed was another house of the same kind, but incumbered by prior liens amounting to $5,000 more than the lien on the other house. In order to put the plaintiff in the position that the defendant, by the employment, undertook to place her, it was necessary to reform the deed which it procured for her and then pay the $5,000 mortgage. This situation was due to defendant's neglect to do what it was employed to do, and constituted a sufficient basis for the damages awarded.

The defendant undertook to perform duties in the nature of professional services for the plaintiff, and on the. findings and facts of the case was guilty of negligence. The damages which the plaintiff sustained as the natural and necessary result of this negligence was the loss of the money which she paid on the faith of the defendant's advice. There are no facts in the case upon which to found any duty or obligation on her part to mitigate the damages, and so we think the judgment is right and should be affirmed.

All concur.

Judgment affirmed. _____