## ARMS & DRURY, Inc., v. COLUMBIA TITLE INS. CO. OF THE DISTRICT OF COLUMBIA.

### No. 5740.

Court of Appeals of the District of Columbia.

Argued April 5, 1933.

Decided May 22, 1933.

Benjamin S. Minor, H. Prescott Gatley, and Arthur P. Drury, all of Washington, D. C., for appellant.

Edwin C. Brandenburg and Louis M. Denit, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

The issue herein is to determine which of two innocent parties shall bear a loss imposed upon them by the fraud of a third person.

In November, 1926, the appellant, Arms & Drury, Incorporated, was engaged in the business of making real estate loans in the District of Columbia. At that time a colored real estate broker named White applied to appellant for a loan of $6,000, to be secured by deed of trust upon lot 54, square 237, in the city of Washington, which was in a colored neighborhood. White dealt with Nicholson, vice president of appellant corporation, and represented to him that the property was owned by Mrs. Wilhelmina Wunder, and that he (White) was acting as her agent in securing the loan. Nicholson inspected the property, and went inside and talked to the tenants, who said that Mrs. Wunder was the owner and that they rented directly from her.

A few days later White returned to Nicholson, who agreed to make the loan, telling White to order the title to be made, preferably by the Columbia Title Insurance Company, now the appellee herein. White thereupon ordered the title from appellee, and in December he delivered to Nicholson a preliminary report from appellee, showing that according to the records Wilhelmina Wunder and William H. Wunder, her husband, could together sell and convey a good title to the property. Nicholson then prepared a deed of trust and six notes in the sum of $1,000 each, all dated January 11, 1927. About two days later White came to Nicholson with a colored woman whom he introduced as Mrs. Wunder, and stated that they were ready to execute the papers. Nicholson told them that Mr. Wunder also would have to sign the deed of trust. Both White and the colored woman said they did not understand that Mr. Wunder was to sign, as the property belonged to Mrs. Wunder, but White said he would get Mr. Wunder to come in the next day. Mr. Wunder did not come in, but about two days later White and the same colored woman returned and said that Mr. Wunder was working in Virginia; that he would be unable to come to Nicholson's office before 5 o'clock to sign the papers; and that they probably could make some arrangements to have them executed outside. Thereupon, Nicholson gave them the papers and they brought them back about January 13, 1927, signed with the names of Wilhelmina and William H. Wunder, and acknowledged in due form before a notary public. The notary certified that both Wilhelmina Wunder and her hus-

band, William H. Wunder, were personally well known to her and had personally appeared before her and executed the papers.

It may here be stated that this entire transaction upon the part of White and the colored woman was fraudulent; that the colored woman was not Mrs. Wunder; that the real Mrs. Wunder was a white woman, a widow, who knew nothing of this transaction; that Mr. Wunder had been dead for many years; and that the signatures to the notes and deed of trust were forged by White and his accomplice.

Nicholson, in ignorance of the fraud, sent the deed of trust, together with a check for $5,857 and a letter of instructions, to the appellee, reading as follows, to wit:

"Columbia Title Insurance Company:

"Inclosed find deed of trust from Wilhelmina Wunder et ux to Samuel A. Drury and James B. Nicholson, dated January 11, 1927, for $6,000 secured on lot 54, square 237, and our check for $5,857. This money is to be disbursed by you when you can furnish us with a certificate of title showing title good and this trust to be a first lien on this property; a tax certificate, showing all taxes paid and a recorder's receipt for the deed of trust. We hold the notes and insurance policy. You are to collect your charges.

"[Signed]    Arms & Drury, Inc., J. E. S."

This letter, with the deed of trust and the check inclosed, was then delivered by Nicholson to White to be delivered by him to appellee. White, accompanied by the same woman, then went to the office of appellee and delivered the letter with its inclosures to Quigley, who was employed as a settlement clerk by appellee. The colored woman said she was not going to be in the city on the day when the disbursements would be made, which was to be the day after the receipt by appellee of the deed of trust and other papers, and wanted to have certain disbursements made for repairs that had been done on some property she owned.

A list of the names and amounts of the disbursements to be made was then written upon the envelope in which the papers had been delivered to Quigley. Quigley then had the deed of trust recorded and had checks drawn in accordance with the figures noted upon the envelope, and handed all of the checks to White for distribution, as Quigley did not know any of the payees. The checks were afterwards duly paid. On January 14, 1927, appellee issued its certificate to appellant showing that, according to the records, the deed of trust was the first lien on the property.

In May, 1927, Mr. Nicholson first learned that the deed of trust and the notes were forgeries. He thereupon requested appellee to return the money which had been delivered by check to it. The exact date when this request was made does not appear, though it was after the time when the entire amount had been disbursed by appellee. His request being refused, this suit was brought January 1, 1930.

Appellant's claim herein is founded upon the allegation that it delivered to the appellee the sum of $5,857 to be disbursed by appellee to Wilhelmina Wunder, and that appellee did not then nor has it since disbursed such sum as so directed by appellant, nor has it returned the same or any part thereof to appellant, although often requested so to do.

The issue was tried to the court acting also as jury, and after hearing the evidence the court held against the appellant, whereupon this appeal was taken.

■ We think the decision of the lower court was right. The case is governed by the rule that where one of two innocent persons must suffer a loss the one whose act was the cause of the loss should bear the consequences. As otherwise stated, the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible. Central National Bank v. National Metropolitan Bank, 31 App. D. C. 391, 17 L. R. A. (N. S.) 520; National Safe Deposit Company v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 57 L. Ed. 1241.

■ The facts as disclosed by the evidence indicate that the appellant was the party whose misplaced confidence made possible the wrong herein complained of. The appellant was first deceived by the fraudulent misrepresentations of White and the spurious Mrs. Wunder. Appellant accepted these representations without sufficient investigation, and relied upon them as evidence of the identity of the colored woman as Mrs. Wunder. Appellant also accepted the signatures alleged to be those of Mr. and Mrs. Wunder upon the deed of trust and the notes as genuine. Acting upon these assumptions, appellant sent the deed of trust by the hands of White and the spurious Mrs. Wunder to the appellee together with a check payable to the appellee for the amount of the loan for disbursement. The appellee was thereby led by appellant into the belief that the signatures upon the papers, which had been accepted by appellant, were genuine.

The possession of the deed of trust by the spurious Mrs. Wunder and of the check

representing the contents of the loan was in effect an introduction by appellant to appellee of the bearer as the genuine Mrs. Wunder to whom the money was to be paid. Otherwise the bearer would have had no interest or place in the settlement. The transaction, accordingly, does not admit of the interpretation that the burden of ascertaining the genuineness of the signatures upon the deed of trust and the notes was to be imposed upon the appellee. It was the appellant who dealt with the parties making the loan and who accepted the signatures as genuine. It should be noted also that the appellee as a title company acting in ordinary course would restrict its investigation to the records of title only, and the opinion which it furnished to the appellant was expressly based upon such an investigation.

The proceeds of appellant's check therefore were distributed to or upon the order of the person who was designated by appellant as the one entitled to receive the same. It is fair to assume from the circumstances that the appellant would have delivered the money to the same person had the disbursement been made by appellant at its own office. We therefore consider that as between appellant and appellee it was the appellant whose acts were the cause of the loss in question and whose misplaced confidence made the wrong possible. The loss, therefore, must fall upon it. Drury v. Gorrell, 44 App. D. C. 518, 529; Moore v. Moore, 47 App. D. C. 23; Gray v. Jacobsen, 56 App. D. C. 353, 354, 13 F. (2d) 959, 48 A. L. R. 583.

Appellant presents certain assignments of error relating to the admission and exclusion of evidence at the trial. We have examined these with care, but find no substantial error in the rulings of the court in this regard. It seems to us unnecessary to discuss the assignments in detail, for the facts as disclosed by the evidence are free from doubt.

The judgment of the lower court is therefore affirmed, with costs.