## Narberth Building and Loan Association, Appel., *v.* Bryn Mawr Trust Co.

Argued December 15, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Henry A. Frye,* with him *George A. Purring,* and *James L. Johnson,* for appellant.

*Russell J. Brownback,* with him *Roger B. Reynolds,* for appellee.

OPINION BY PARKER, J., February 26, 1937:

This is an action in assumpsit brought by Narberth Building and Loan Association against The Bryn Mawr Trust Company to recover a balance claimed to be due on a title insurance policy. The sole question involved on this appeal concerns the date as of which plaintiff is entitled to have damages assessed on account of an admitted defect in the title insured. The cause was submitted to the court below on a case stated and that court entered a judgment in favor of plaintiff for $203.36, whereupon the plaintiff appealed to this court

claiming that it is entitled to a judgment for $2,161.15 with interest.

We will state the essential facts. On August 14, 1925, the defendant, in consideration of a cash premium, insured the plaintiff building and loan association that the "title of the Assured to the estate, mortgage, or interest described in Schedule A ......, is [was] good and marketable and clear of all liens and encumbrances charging the same at the date of this Policy," saving such liens and encumbrances as were set forth in another schedule. Schedule A described the estate or interest of the insured covered by the policy as an interest as mortgagee in a certain lot in Haverford Township, Delaware County, Pennsylvania. The mortgage, dated August 11, 1925, was given by Louis C. Brenner to secure the sum of $2,500 with interest and was recorded on August 14. In the other schedule there was excepted a prior first mortgage given to secure the sum of $5,000. The policy contained, among others, the following condition: "10. If claim be made because of unmarketability or defect of title, or of liens or encumbrances not excepted in the Policy, the Company shall have the right to take the estate or interest insured at its then market value, irrespective of the alleged defect, lien, or encumbrance, and shall be entitled to a conveyance thereof, with proper allowance for all defects, liens, or encumbrance not insured against by the Policy. And no action shall be brought against the Company for any claim under this Policy until thirty days after notice in writing of such claim." The trust company limited its liability to $2,500 and to the amount of "the pecuniary interest" of a holder of collateral security such as a mortgagee. The insured was required to give notice to the company of any adverse claim within fifteen days after learning of such claim.

On March 6, 1934, the mortgagor defaulted and fore-

closure proceedings were instituted with the result that the premises were sold to a nominee of the building and loan association on April 21, 1934. The cost of foreclosing the mortgage was $203.36. At the date of the foreclosure, payments had been made by the mortgagor on account thereof and the balance due, including the cost of foreclosure, was $2,161.15. On May 10, 1934, the building and loan association for the first time discovered that Louis C. Brenner, the mortgagor, did not have a marketable title to the premises but the said premises were in fact, on that date and afterwards, owned by Louis C. Brenner and Mary C. Brenner, his wife, as tenants by entireties. On that same date the solicitor for the building and loan association notified the trust company of the defect in the title and made demand for payment of the loss sustained by it. By letter of the same date, the building and loan association gave notice of its claim and offered to convey the mortgage to the trust company on payment of the balance due on the mortgage, taxes due, and expense of foreclosure. On July 29, 1935, Louis C. Brenner and Mary C. Brenner, his wife, conveyed the premises covered by the mortgage to a third party, thus defeating any possible title that Louis C. Brenner might have to the real estate in the event of the prior decease of his wife. (*Fleek v. Zillhaver,* 117 Pa. 213, 12 A. 420).

It was stipulated that on August 14, 1925, the date of the issuance of the policy of insurance, there was an equity in the mortgaged premises, over and above the first mortgage and all other encumbrances covered by the policy, of at least $2,500 and that on March 6, 1934, the date upon which plaintiff entered its bond and instituted its foreclosure proceedings, as well as thereafter, there was no equity in the property.

The plaintiff claims that it is entitled to be reimbursed for its entire loss on the ground that the damages were fixed as of the date the policy was issued,

while the trust company insists that it is not liable for anything more than the cost of foreclosure since at the time foreclosure proceedings were instituted and at the time demand was made on the trust company for reimbursement there was no equity in the property. The court below entered judgment for the amount expended in foreclosing the mortgage.

"Contracts of professional surety companies, being ordinarily in terms prescribed by themselves, should be construed strictly in favor of the obligee": *Hess v. Merion T. & Tr. Co.*, 317 Pa. 501, 177 A. 53. Approaching the problem with that admonition in mind, we are all still of the opinion that plaintiff was not entitled to have its damages assessed as of the date of the policy. We find a dearth of authorities dealing with the precise question involved, and this is due in part to the fact that many of the policies issued by insurance companies which have been before the courts for interpretation were more specific in their terms than the policy here involved.

"The provisions of this policy did not constitute the defendant company a surety for the mortgaged debt, nor a guarantor of its payment. The defendant did not undertake to insure that the property mortgaged was a sufficient security for the debt. What it did undertake to do was to indemnify against loss or damage sustained by reason of defects of title and liens upon the land": *Whiteman v. Merion T. & Tr. Co.*, 25 Pa. Superior Ct. 320, 322. It is obvious that if the title had been perfect the plaintiff would have been unable to have collected its debt when the mortgagor defaulted, for it is conceded that there was then no equity in the property. The loss actually suffered was due entirely to failure of value and not in any respect to failure of title. If the trust company had perfected the title it would not have benefited the mortgagee.

The case of *Fifth Mutual Bldg. Soc. of Manayunk's*

*Appeal,* 317 Pa. 161, 176 A. 494, is authority for the proposition that where at the time a policy of title insurance is delivered the title is defective by reason of a lien or encumbrance, the contract is breached and the title company is immediately liable to the insured. As the learned judge of the court below pointed out, while the contract of insurance was breached at the time the policy was delivered and the title company became immediately liable to the insured, it was only liable for the loss that the mortgagee actually suffered and for such loss as was due to failure of title. When the assured asserted its loss and made demand for payment, that loss was required to be determined as of the date of the demand. If there had been no diminution of value the limit of value used to measure the loss would not have been $2,500 but only $2,161.15. It would not have been measured as of the date of the policy. Likewise, when the value of the security decreased the loss suffered was due to failure in the value of such security and not to the defect in title. We are therefore of the opinion that the measure of the liability to be applied under the wording of this policy was fixed as of the date demand was made for compensation.

The conclusion at which we have arrived is not inconsistent with the declarations of the Supreme Court in the Manayunk case. In fact a number of statements in that opinion make it clear that the Supreme Court did not intend to dispose of the question here presented. In that case there was a foreclosure proceeding and it was said that that proceeding two years later merely *concretely demonstrated* the extent of exceptant's loss and of the company's reciprocal obligation. The court also said (p. 167) : "The loss sustained could have been measured by appropriate proceedings any time after the investment had been made." Again, at page 168 it was stated: "When in this class of cases such a sale does take place, courts accept the result as fur-

nishing the best data for measuring damage, but the sale does not *give rise* to the loss nor is it ever the only available method of determining its extent."

While the insurance company limited its liability to defects that were in existence at the date of the policy, it did not so limit its liability with relation to the assessment of damages. A supposititious case will illustrate the thought. Assume that there was an outstanding life interest at the date a policy was issued. There would immediately be a breach of the contract and the insured might sue for and recover such damages as he suffered. But let us again assume that before such outstanding life interest was discovered the life tenant died. Certainly it could not be said that the plaintiff had suffered any loss. Now, when we keep in mind that the trust company was insuring title and not security, the plaintiff cannot be said to have suffered any loss by reason of a defective title as a perfect title would have been of no value at the time.

The 10th condition of the policy lends support to the conclusion of the lower court for it is there provided that if claim is made under the policy by reason of unmarketability, the trust company shall have the right to take the estate or interest insured at its *then* market value, irrespective of the alleged defect, lien or encumbrance, etc. We do not see how "then" can refer to any other time than the date when the claim is made for adjustment and certainly does not refer to the occasion when the policy was issued. This clause would seem to be wholly inconsistent with an assumption that the loss was to be measured invariably as of the date of the policy. On the other hand, it implies that the damages are to be assessed as of the date that the claim for compensation or loss is made. If the property increased in value the assured was not required to surrender his title on the basis of the value when the policy was issued, and likewise if the value

had decreased the company was not required to pay more than the *then* value. If the equity at the time demand was made had been $500, the company would have discharged its obligation by paying the plaintiff $500 for its title and reimbursing it for such expenses as could have been shown to be a part of its loss: *Whiteman v. Merion T. & Tr. Co.,* supra. While this provision in the policy does not warrant a conclusive deduction as to the time damages are to be measured, it is a strong indication of the proper interpretation of the other clauses.

The parties have not called to our attention, nor have we been able to discover, any decisions of the appellate courts of this state decisive of the point in issue. In *Fox Chase Bank v. Wayne J. Tr. Co.,* 258 Pa. 272, 101 A. 979, an insuring trust company was not permitted to show the market value of a mortgage was less than that disclosed by an actual sale. The case of *Ky. Title Co. v. Hail,* 219 Ky. 256, 292 S. W. 817, involved the same question as that we are considering and the court there arrived at the same result that we do. On the other hand, the case of *Glyn v. Title Guar. & Tr. Co.,* 117 N. Y. S. 424, lends some support to the position of the appellant. We have examined a number of cases decided in other states which involved a question as to the time as of which the damages were to be assessed, but the decisions turned upon provisions in the policies different from those with which we are dealing.[1]

Judgment affirmed.

---

[1] *Murphy v. U. S. T. Guar. Co.,* 172 N. Y. S. 243; *Ehmer v. Title Guarantee & Tr. Co.,* 156 N. Y. 10, 50 N. E. 420; *Flockhart Foundry Co. v. Fidelity Union Tr. Co.,* 132 A. 493; *Morris v. Chelsea T. & G. Co.,* 171 A. 819; *Montemarano v. Home Title Ins. Co.,* 258 N. Y. 478, 180 N. E. 241.