[Civ. No. 11427. Second Appellate District, Division One.—July 22, 1938.]

A. G. SALA et al., Respondents, v. SECURITY TITLE INSURANCE AND GUARANTEE COMPANY (a Corporation), Appellant.

694

George H. Woodruff, Chapman & Chapman and Ward Chapman for Appellant.

Harry C. Mabry and Laurence B. Martin for Respondents.

DORAN, J.—This is an appeal by defendant from the judgment and from the order denying defendant's motion for judgment notwithstanding the verdict, as well as from the order denying a motion for a new trial, in an action on a

policy of title insurance. The facts will appear in the opinion.

A. G. Sala and Harry M. Seigler, respondents herein, purchased certain land consisting of acreage in the vicinity of Clearwater, Los Angeles County, California, in February of 1928. The property had been lost through foreclosure, by the former owner, one W. L. Bessolo, and respondents acquired the property by sheriff's deed after having purchased Bessolo's equity of redemption. The purchase price was $12,000, which was obtained by Sala and Seigler from the Bank of Italy National Trust and Savings Association on a loan secured by a trust deed on the property so purchased. Incidental to the transaction a policy of title insurance was purchased from the Security Title Insurance and Guarantee Company (hereinafter referred to as "title company"), appellant herein, insuring the title to said property in the sum of $20,000. Thereafter, to wit, on May 14, 1929, one-half of the property was sold by Sala and Seigler, subject to the trust deed above mentioned, to the Collins Concrete Pipe Company of California for $15,000. This transaction was represented by a down payment and a contract of sale providing for the balance due to be paid in monthly installments of $300. In August of 1930, the Collins Concrete Pipe Company defaulted, repudiated the contract and discontinued further payments thereunder, after having paid to Sala and Seigler approximately $4,500 on account of the transaction. About the same time plaintiffs and respondents, Sala and Seigler, discontinued interest payments to the Bank of Italy on account of the trust deed note, and after repeated demands by the bank the trust deed was foreclosed. The property was purchased by the bank at the foreclosure sale in March, 1932, for the total amount of the accrued debt in the sum of $14,000. Two years and five months later, to wit, on August 31, 1934, Sala and Seigler filed the action herein against the title company on the above-mentioned policy of title insurance.

In attempting to fabricate and complete a cause of action against the title company, respondents Sala and Seigler rely upon the following additional facts. For some time prior to July 19, 1923, the land involved herein was owned by Frank Zamboni and Joe H. Masero, who sold the same to Bessolo, who in turn sold it to Sala and Seigler. On July 19, 1923,

an action (hereinafter referred to as the "Zamboni action"), was commenced by Zamboni and Masero against Bessolo, wherein it was sought to rescind the transfer to Bessolo on the grounds of a total failure of consideration. In connection with this action a *lis pendens* was recorded. When the cause came on for trial a nonsuit was granted which was followed by the entry of the judgment on November 10, 1926. An appeal from the judgment resulted in a reversal on December 3, 1927. It should be noted at this point that in reversing the judgment the court declared that although it is the law that rescission of a deed of real estate cannot be had on account of the subsequent failure of the grantee to comply with his agreement, nevertheless the trial court should have directed an amendment and then proceeded to award plaintiffs the relief to which the evidence showed them to be entitled. (See *Masero et al.* v. *Bessolo,* 87 Cal. App. 262 [262 Pac. 61].) The *remittitur* which was filed February 3, 1928, was in part as follows: "and the trial court is hereby directed to allow plaintiffs to amend their complaint, if so advised, so as to present all the issues which may be properly tendered and tried in this case, to the intent that the plaintiffs may be awarded such relief as may be consonant with equity and justice". It should also be noted at this point that the negotiations for the purchase of the land by Sala and Seigler, from Bessolo, commenced in February, 1928. In this connection it appears that the land in question had been sold to satisfy a judgment against Bessolo and that the period of redemption was about to expire. Sala and Seigler entered into an agreement with Bessolo, under date of February 25, 1928, which provided that whereas the property was subject to a sale made to the First National Bank of Compton on February 28, 1927, pursuant to an execution against Bessolo, that Bessolos were not able to redeem and were therefore willing that Sala and Seigler should acquire the title on certain conditions therein stated.

On May 15, 1928, a motion for leave to amend the complaint was filed in the Zamboni action, to which was attached a copy of the proposed second amended complaint; the proposed amended complaint alleged, for the first time in said litigation, a purported cause of action for rescission based on fraud. Two days later, to wit, on May 17, 1928, the policy of title insurance, upon which the action herein is based, was

issued by appellant under the circumstances hereinbefore mentioned. The pertinent parts of the insurance policy are as follows:

"The Company by this policy of title insurance . . . does hereby insure A. G. Sala and Harry M. Seigler . . . (as to an interest in fee simple), . . . and Bank of Italy National Trust and Savings Association . . . (as beneficiary under Exception No. 6 herein), . . . against loss or damage not exceeding in all the sum of Twenty Thousand Dollars, which the said Insured shall sustain by reason of any incorrect statement in this policy concerning the title to the real property hereinafter described, . . . which said statement of title and conditions and stipulations are hereby made a part of this policy. . . .

"Subject only to the following:

### EXCEPTIONS AND ENCUMBRANCES
\* \* \*

"Taxes for the fiscal year 1928–1929.

"A Deed of Trust, with power of sale, dated May 11, 1928, to National Bankitaly Company, a corporation, trustee, executed by A. G. Sala and Paula Sala, his wife, and Harry M. Seigler and Josephine Seigler, his wife, to secure the payment of Twelve Thousand Dollars ($12,000.00), with interest thereon, according to the terms of their promissory note or notes . . .

\* \* \*

"II. Liability of the Company: Except as otherwise shown by the statement of title contained herein, and subject to the terms hereof, the Company hereby insures a marketable title to the estate or interest of the Insured, . . . The Company may and will, at its own cost and expense, defend the Insured in all actions or proceedings founded on a record claim of title or encumbrance prior in date and time to this policy and hereby insured against. The Company will not be liable to anyone by reason of defects, liens or encumbrances by such person created or suffered, or created subsequent to the date hereof, or resulting in no pecuniary loss to the Insured; nor for any sum in costs, expenses and loss in excess of the amount of this policy . . .

\* \* \*

"IV. Notice—Right of Action: In case any action or proceeding is begun as mentioned in Paragraph II, and the

Insured shall be made a party thereto, or in case actual knowledge shall come to the Insured of such adverse claim of title or interest, the Insured shall at once notify the Company thereof in writing and secure to it, in the name of the Insured, the right to pay, satisfy, compromise, or, at the option of the Company, resist and defend such adverse claim to final determination. If such notice shall not be given to the Company within thirty days after actual notice to the Insured of the pendency of such action then this policy shall be void, but only as to the Insured receiving such notice and failing to notify the Company within said time, otherwise in full force. Right of action against the Company shall accrue under this policy (1) when and if, after receiving such notice, it shall fail within a reasonable time, in the name of the Insured, to institute and faithfully prosecute proper action to remove, or otherwise pay, satisfy, compromise or defend to final determination, such adverse claim of title or interest, and (2) when there has been a final determination by a court of competent jurisdiction adverse to the title as insured.

\* \* \*

"VI. As to Payment: The Company reserves the option to settle any claim insured against by this policy, or to pay this policy in full; and the payment to the full amount of this policy shall terminate all liability of the Company hereunder. . . . ''

Before the second trial of the Zamboni action, appellant herein, the title company, became associated with the defendant Bessolo's attorneys, and participated, as such, in the second trial. The above mentioned second amended complaint, based on fraud, was permitted to be filed over the defendant Bessolo's objection and after demurrer thereto. At the conclusion of the trial the judgment was adverse to Bessolo who thereafter perfected an appeal, but before the determination thereof, through the efforts of the title company, the action was settled. A judgment was entered in favor of Bessolo which effectively cleared the title to the property, which, it should be remembered, is the same property Sala and Seigler had purchased.

In substance, it is contended by respondents Sala and Seigler in connection with the within appeal, and alleged in the complaint as well, that the insurance policy guaran-

teed and insured a marketable title; that it made no mention of the *lis pendens* which was a defect in the title; that it did not contain a true and correct statement concerning the title to said property; that the title company knew of the *lis pendens* at the time the policy was issued but that the same was ignored; that if the title to the property had not been misrepresented in the policy of insurance respondents would not have purchased it or secured the loan of $12,000. It is further alleged in the complaint and contended by respondents that notwithstanding plaintiffs' persistent demands that some action be taken by the title company as required by the terms of the policy in plaintiffs' behalf to protect the title, nothing was done for a long period of time, as a result of which delay, and on account of the defective title, the Collins Concrete Pipe Company defaulted and plaintiffs herein, being unable to pay the purchase price, lost the property. It is also alleged and contended that the title company acted in bad faith and was in collusion with the Bank of Italy, all of which bad faith and unreasonable delay, it is alleged, was for the purpose of avoiding liability to plaintiffs.

The theory of the trial court may be gathered from the remarks of the judge who presided at the trial, as follows: "It seems to me we are getting pretty far from what is really rather a simple issue; first, whether there was a policy of insurance issued; that seems to be admitted by everyone; second, whether there was a defect in the title; third, whether that defect rendered the title bad or unmarketable, and fourth, what, if anything, was the difference in value between the property if the title had been good as it was assured to be, and what it was with any defect, if any existed, assuming that the value was there. That is all there is to this case, as I see it." And again: " . . . I think, in this type of case, the measure of damages is the difference between the value of the property, if it had a good, marketable title, which the company assured that it did have, and the value of the property if the title was not marketable, and if that non-marketability was by reason of some defect, which was a matter of record, which the company failed to show in its certificate of title." And, in a later observation: "It seems to me, the more I think of it, the more I am convinced it is correct that the only possible measure of damages for the

breach of an obligation of this kind, is the difference in value between the thing as represented, and the thing as it was.''

■ Before analyzing the respondents' contentions and the theory of the trial court, above noted, the facts may be summed up as follows: During the second trial of the Zamboni action, as indeed was the case at all times, respondents Sala and Seigler were in this position: There being a *lis pendens* on record, the outcome of the Zamboni trial would affect the title of the property which was the subject of the lawsuit, although the record title thereof was in the name of respondents Sala and Seigler, who were not parties to that action. At the conclusion of the Zamboni trial when the judgment was adverse to the interests of respondents Sala and Seigler, it was evident that respondents would lose the property by virtue of the judgment, unless such judgment could be set aside or reversed, or unless a settlement could be reached, the effect of which would clear the title. After the adverse judgment in said action an appeal was taken and perfected and appellant's opening brief was filed. Pending the appeal in that action, respondents herein lost the property as a result of the foreclosure of the trust deed, which foreclosure vested the title to the property in the Bank of Italy. At the same time the foreclosure relieved respondents Sala and Seigler of the total amount of the debt secured by the trust deed. Thereupon, according to its terms, the benefits of the policy inured to the Bank of Italy, the new title holder of the property. Manifestly, if the judgment in the Zamboni case could not be reversed on appeal and a different judgment obtained that would clear the title, or the same result achieved by settlement, then, and in that event, a cause of action would follow in favor of the Bank of Italy, and against the title company. Under such circumstances would respondents Sala and Seigler also have a cause of action against the title company by virtue of the same policy of insurance? And if so, for what?

Returning now to the contentions of respondents, from a review of the record and in the light of the foregoing summary, each and all of such contentions are without merit.

■ In connection with respondents' claim that the insurance policy did not contain a true and correct statement concerning the title, exaggerated and unwarranted importance is attributed to the failure of the title company to mention the *lis pendens* in the insurance policy, when, in

truth, the failure to so mention the *lis pendens* is of no consequence. The insurance policy did not purport to recite, nor did the title company undertake to sell, to respondents a list of possible encumbrances in connection with which opinions might differ as to the legal effect thereof. Respondents were in no position at the time the insurance was purchased to dictate to the title company the form and substance which its obligations should assume, nor are they in a position now to complain because the insurance policy did not contain something which the insurance company in the conduct of its business and in its best judgment saw fit to omit. Although it is unnecessary to decide the question in connection with the appeal herein, there is abundant authority to support appellant's contention that the record of the *lis pendens* did not at any time constitute a defect of the title to the property. ■ It is conceded that the title company intentionally ignored the *lis pendens* because the action upon which it was based, as heretofore noted, was an action to rescind a deed on the grounds of failure of consideration. It is elementary that such an action does not lie. Moreover, it is evident, from a review of the record, that the title company had every reason to assume that an amendment to the complaint in the Zamboni action which would change the character of said action would not be permitted, and that if it were permitted such amendment would *ipso facto* invalidate the *lis pendens,* for it has been held, as the Supreme Court has hitherto observed, that "An amendment to the bill or complaint, after a purchase or the acquisition of other rights *pendente lite,* which does not alter the cause of action, does not affect the *lis pendens,* since it relates back to the filing of the original bill. On the other hand, if the cause of action is changed by the amendment, or a new cause added, the *lis pendens* does not relate back but dates from the filing of the amended complaint." (*Dobbins* v. *Economic Gas Co.,* 182 Cal. 616, 628 [189 Pac. 1073].) Manifestly, the amendment in the Zamboni case which set up a cause of action based on fraud changed the character of the action from an action *ex contractu* to an action *ex delicto.*

The title company had the right to include or omit a reference to the *lis pendens* in the insurance policy as it chose, and by no process of logical reasoning, in the light of the

record, can any causal connection be established between such omission and the loss of the hereinbefore described property by respondents.

◼ With regard to respondents' contention above mentioned, namely, that if the title to the property had not been misrepresented in the policy of insurance respondents would not have purchased the property or secured the loan of $12,000, it is at once apparent that such argument is unsound, and from the standpoint of logic merely consists of one of a series of "ifs", which can be multiplied on the one hand by appellant as readily as they can be increased on the other by respondents, and so on *ad infinitum*. Moreover, appellant owed no duty to include any reference to the *lis pendens* in the contract of insurance, and the failure so to do in no sense was a misrepresentation either directly or in effect.

◼ With regard to respondents' contentions that the Collins Concrete Pipe Company defaulted on account of the defective title, and that the title company acted in bad faith and was in collusion with the Bank of Italy, it is sufficient to note that the record is destitute of any legal evidence in support of such contentions, nor is there any evidence in the record in support of respondents' contention that the title company was guilty of unreasonable delay in clearing the title. To the contrary, the record reveals that two of the parties to the Zamboni action died, which of necessity required the appointment of administrators and substitutions in order to carry on the litigation. And, also, the chief counsel for one of the parties was in a sanitarium for six months, which, together with other facts and circumstances in connection with the progress of the litigation, accounts for the delay in every respect, and leaves the title company free from warranted criticism in this regard.

The theory of the trial judge, as above outlined, apparently results from a misconception of the legal effect of the insurance policy in question. Its legal effect may be determined by familiar rules, for example, as pointed out by respondents, "Obviously, the parties may contract in any particular policy, as they see fit", and further quoting from respondents' brief, "A policy of title insurance is a contract of indemnity . . . To determine the rights and liabilities of the parties to the contract it is necessary to deter-

mine the extent of their respective promises and whether those agreements have been performed. In deciding what the parties have promised, the courts are at liberty to, and do, exercise certain well settled principles of interpretation. Policies of title insurance are subject to the same rules of construction as all other insurance policies.''

The theory of the trial court, and the contention of respondents as well, fails to take into account the contract in its entirety, and by thus disregarding the rights of the title company under the terms of the contract, assumes that the title company breached the contract as of the day the insurance policy was issued and that therefore and on said date was liable in damages for the difference between the value of the land with a marketable title and its value with an unmarketable title. Such a theory is obviously unsound for the reason that it forecloses the title company, if it elects so to do, from exercising its right, according to the terms of the policy, to clear the title. Manifestly, the insurance policy must be construed in its entirety, and it was as much the right of the insurance company to perform the contract according to its terms as it was the right of the assured to expect payment in the event of a failure upon the part of the title company so to do.

Respondents complain bitterly because the title company did not commence ''in the name of the Insured'' an action to clear the title, which omission, it is argued, constituted a breach of the insurance contract on the part of the title company, and from which breach the alleged cause of action herein in part accrued. The complaint is trivial; it is based on the clause in paragraph IV of the insurance contract wherein, as above noted, it is provided that a right of action against the company shall accrue when the company shall fail within a reasonable time in the name of the Insured to institute and faithfully prosecute proper action to remove the adverse claim. But the same clause further provides, ''or otherwise pay, satisfy, compromise or defend to final determination, such adverse claim'', and this is precisely what the title company did, in fact, do. Assuming that a cause of action existed against the title company, the clause in question merely determined when such action could be commenced. The fact remains that the title company performed

the contract of insurance fully and expeditiously and cleared the title to the land in question, and there is no evidence in the record to establish a causal connection between any act or omission on the part of the title company and the loss of the property by respondents. The respondents are in no position under the circumstances herein to complain about the course pursued and the methods employed to bring about the result.

With regard to the plea by defendant of the bar of the statute of limitations, it is appropriately recited in appellant's brief, that ''if it is an action in tort growing out of defendant's negligence, the right of recovery was barred, at least after two years from the time their property was lost through foreclosure, and no claim of lack of knowledge of the existence of the cause of action would suspend the running of the statute. On the other hand, if the cause of action was based on fraud, the complaint was deficient in several respects, but especially in failing to set forth facts excusing their alleged failure to discover the fraud within a period of three years prior to the commencement of the action.'' It is sufficient to note in this connection that, in the light of the record, upon whatever theory plaintiffs seek to base a cause of action against the title company, such attempt is effectively barred by the statute of limitations.

The evidence reveals that Sala and Seigler had known each other for many years and had been in many real estate transactions together. The only logical, reasonable deduction from the evidence indicates that respondents purchased the land in question with borrowed money, and being unable to pay the loan when due, lost the property. They may have profited more if they had been able to retain the land, but nevertheless neither the loss of the land nor the loss of contemplated profits can be attributed to any actionable act or omission of the title company or to the failure of the title company to perform its obligations under and according to the terms of the insurance contract.

The motion for a judgment notwithstanding the verdict should have been granted.

For the reasons heretofore given the judgment is reversed with directions to enter judgment for the defendant. There being no appeal authorized from the order denying

a motion for a new trial, the attempted appeal therefrom is dismissed.

York, P. J., and White, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 17, 1938.