**METROPOLITAN TITLE GUARANTEE
CO., Appellant,**

v.

**William GILDENHORN, Appellee.**

**No. 13480.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1957.

Decided Oct. 31, 1957.

Petition for Rehearing Denied
Dec. 16, 1957.

Mr. Henry Lincoln Johnson, Jr., Washington, D. C., for appellant.

Mr. J. Strouse Campbell, Washington, D. C., for appellee.

Before BAZELON, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a judgment of the District Court awarding money damages to the insured, Gildenhorn, under an interim title insurance binder issued by appellant Metropolitan Title Guarantee Company.

The facts, briefly, are these: In 1951, Gildenhorn arranged with Public Service Title Company to invest $4,000 in a certain encumbered property in the District of Columbia for which refinancing was being sought. The property at that time was subject to first, second, and third trusts, all of which were to be liquidated by Public Service in the refinancing and to be replaced by a new first trust and note in Gildenhorn's favor. Public Service also agreed to perform a title search on the property, to secure title insurance, and to furnish to Gildenhorn a certificate of title showing that the new trust had been recorded as the senior security. Public Service was the representative in the District of Columbia of the appellant Metropolitan Title Guarantee Company, which has offices in New York City. Subsequently, Metropolitan issued to the appellee Gildenhorn, "through the offices of Public Service Title Company," an interim binder for a title guaranty policy, stating that the title was good in the fee owners (one Yates and his wife), subject only to the three old trusts. Public Service obtained from the fee owners a deed of

trust and a note for $4,500 payable to Gildenhorn's agent; it also recorded the Gildenhorn trust. Gildenhorn paid $4,-000 cash to Public Service for the note. But, contrary to its agreement with Gildenhorn, Public Service paid off only two of the existing trusts, leaving the new Gildenhorn trust junior to one of the old, and still extant, trusts. These events took place in the summer and fall of 1951.

In January, 1952, Gildenhorn learned that one of the old trusts had not been retired by Public Service. Public Service at that time informed Gildenhorn's counsel that there was a defect in the title back in 1889 or 1890, and that Metropolitan would not permit it to issue the final policy until it clarified the defect; Public Service requested 60 to 90 days to do this, which was granted. Gildenhorn's counsel demanded by letter in the summer of 1952 that the old trust be paid off, and after ascertaining in October, 1952, that Public Service's bank trustee account, in which Gildenhorn's check had been deposited, no longer existed, renewed his demand that Public Service pay the amount due on the old trust. In a letter dated November 12, 1952, to Gildenhorn's counsel, the attorney for Public Service described the title defect previously referred to[1] and stated that Metropolitan would not permit Public Service to issue a certificate of title (including, apparently, any title insurance policy) "with this state of affairs." The letter further said that if Gildenhorn would accept a title subject to the "exception" set out, Public Service would pay off the remainder of the unpaid old trust and issue to him a certificate as the first trust lienor with the exception noted. Gildenhorn apparently refused this offer. It was later revealed that Public Service had appropriated to its own use the money provided by Gildenhorn for such payment. Public Service subsequently went bankrupt and it, with one of its officers, was prosecuted criminally for this theft.[2] No guaranty policy was ever issued, other than the original binder.

In April of 1953 the holder of the old trust foreclosed. Apparently the makers of the note believed that they had refinanced the whole debt, and that they had discharged their debt under the old trust. Consequently, after making the note to Gildenhorn, they made no further payments to the old trustees. Despite the fact that he had learned in January, 1952, that the old note was still outstanding, Gildenhorn continued to accept payments on his note from the makers until foreclosure. The proceeds of the foreclosure sale were insufficient to satisfy any part of the balance remaining due on Gildenhorn's note.

Gildenhorn then sued Metropolitan on the binder policy alleging that "as a result of a defect in the title to the   *   * property, which was not set forth in the Binder Policy," the plaintiff suffered a loss of his investment. At the trial Gildenhorn's counsel stated that he was relying on a defect in title dating back some 70 or 80 years, which was different

1. The letter read in part as follows:

"As you know there is some sort of confusion which has arisen because of a sale of some interest in this property claimed to have been in the Continental Life Insurance Company as a result of a foreclosure under a deed of trust held on the ¼ interest of Damin A. Gaegler. This trust was originally held by the Old Dominion Protective Ass'n. At the time of the placing of this trust, the interest of Damin Gaegler was subject to a judgment lien, which was foreclosed and the interest of Damin Gaegler was extinguished along with the interest of the Old Dominion Protective Ass'n. Doubtless the Continental Life Ins. Company in acquiring the assets of the Old Dominion Company was not informed of the sale of said interest by the United States Marshal. The subsequent conveyance by the Continental Life Insurance Company does put a cloud upon the record of this property that caused another title company in this District to refuse to issue a commercial title to the property to the successors in interest of the purchasers at the U. S. Marshal's sale."

2. See Clarke v. United States, 1955, 97 U.S.App.D.C. 115, 228 F.2d 462.

from that set out in the Public Service letter of November 12, 1952.[3] The District Court, sitting without a jury, awarded judgment to Gildenhorn.[4]

■■ This suit is to recover a loss allegedly sustained "as a result" of a title defect not disclosed in the binder.[5] Our primary inquiry then must be whether the District Court was warranted in concluding that an undisclosed defect was the proximate cause of the loss in this case—that is, whether such a defect was "that cause which is most nearly and essentially connected with the loss as its efficient cause." Standard Oil Co. of New Jersey v. United States, 1950, 340 U.S. 54, 58, 71 S.Ct. 135, 137, 95 L.Ed. 68, per Mr. Justice Black. See also Ætna Insurance Co. v. Boon, 1877, 95 U.S. 117, 130, 24 L.Ed. 395; Lanasa

Fruit Steamship & Importing Co. v. Universal Insurance Co., 1938, 302 U.S. 556, 562, 58 S.Ct. 371, 82 L.Ed. 422.

■ A study of the undisputed facts here compels the conclusion that, under the test approved in the Standard Oil case, the loss was not proximately caused by any title defect not disclosed in the binder policy. The senior old trust which was foreclosed was of course disclosed in, and excluded from, the coverage of the binder policy. It was the foreclosure of this trust—the result of a chain of events set in motion by the failure of Public Service to fulfill its agreement to retire all three of the old trusts —which was essentially connected with the loss as its operative and efficient cause. Even if there had been no undisclosed defect in title, the loss would have

---

3. See footnote 1, supra. The defect sued on was an apparent gap in the chain of title around 1880. No suggestion was made that any person had made a claim to an interest in the property based on the apparent gap.

4. The court stated orally:

"I find that the Plaintiff is justifiably regarded as having dealt with the Public Service Title Company, and the Defendant Metropolitan jointly; and I further am of the opinion that the Public Service Title Company and the Defendant can properly be regarded as principal and agent interchangeably, the result being that both the Public Service Title Company and the Defendant Metropolitan were responsible to the Plaintiff for his loss.

"The failure of the Public Service Title Company to pay off the existing first lien was the primary cause of the Plaintiff's losing his investment. But this failure put into effect a chain of events in which the defect in title figures most prominently. With the development of the fact that the title was defective— and I hold with the Plaintiff's contention that it was defective—and the fact that the first trust deed lien became in default, the Plaintiff was faced with a consideration of his lien as a second lien, and having to deal with the property with a first lien being threatened to be foreclosed. To protect himself, Plaintiff would have been required to invest additional funds to liquidate the first lien in order to protect his then determined second lien. Furthermore, and this is im-

portant, the Plaintiff would have had to put in more funds and a substantial amount in a property, the title to which was found to be defective, contrary to the terms of the binder.

"For this situation, the Plaintiff was not responsible. Both the Public Service Title Company and the Defendant Metropolitan are responsible for the development of this situation. Hence, I find that the Plaintiff is entitled to judgment."

These statements were formally embodied in findings as follows:

"9. That the proximate causes of the plaintiff's loss was [sic] the failure of the defendant to set forth the title defect in * * * the interim binder policy, and the failure of the Public Service Title Company, Inc. to discharge existing outstanding liens on the said property.

*        *        *        *        *

"12. That the first trust deed lien * * * became in default by reason of the defect in the record title."

5. The binder in terms contained no indemnity provisions but only certified that the title was good in the fee owners, subject to the three enumerated trusts, and covenanted that Metropolitan would issue a policy containing certain provisions upon surrender of the binder within 60 days and payment of the premium. We assume for present purposes, however, that the indemnity provisions which were to be contained in the policy to be issued were effective from the date of the binder.

occurred exactly as it did: that is, the old trust would have been foreclosed in the circumstances here, notwithstanding that the record title was otherwise per-fect in the fee owners. On the other hand, if Public Service had complied with its agreement to pay off the old trust so that there would have been no fore-closure, the facts contain nothing to sug-gest that Gildenhorn would have suffered any loss. On the contrary, the fee own-ers' made payments on their note to him until they lost the property by fore-closure, and no claimants have come for-ward under any other encumbrance—or any defect—to assert priority or other-wise threaten Gildenhorn's security. There was thus no undisclosed title in-firmity which caused any loss. The loss Gildenhorn suffered occurred because the old trust which Public Service had failed to retire pursuant to its contract was foreclosed. Cf. Narberth Building & Loan Ass'n v. Bryn Mawr Trust Co., 1937, 126 Pa.Super. 74, 190 A. 149; Sala v. Security Title Insurance & Guar-antee Co., 1938, 27 Cal.App.2d 693, 81 P.2d 578. The most that can be said is that if Gildenhorn had known of a defect prior to investing his money, he perhaps would not have invested at all.[6] But after the original investment was made, the presence or absence of an undis-closed cloud on the title did not alter or affect the events which precipitated the loss to any degree. And, as sug-gested by Gildenhorn's own witness, the defect sued on probably had been cured by adverse possession.

The appellee urges that there was an essential connection, pointing out that the Public Service letter of November 12, 1952, stated that if he, Gildenhorn, would accept a title subject to the defect set out therein, Public Service would pay off the outstanding old trust and issue a certifi-cate to him as the first trust lienor with the exception noted. But Public Service was already at that time bound by con-tract to pay off the old trust and had been in default in doing so for approxi-mately a year. The mere fact that, in an unsuccessful attempt to amend the con-tract on which it was already bound to pay off the old trust, Public Service re-ferred to a title defect does not supply the essential causative link between that defect and the loss. Nor does this ob-scure the fact that the only operative and efficient cause of the loss was its failure to carry out its original contract. Fur-thermore, it is worthy of note that the title defect referred to in the letter was not the defect on which this suit is based; hence, in any event, the letter would be ineffective to serve as a bridge to connect the defect sued on with the loss.

The District Court recognized that the failure of Public Service to pay off the existing first lien was the "primary" cause of the loss, but purported to find that a defective title was a contributing cause—on the theory (see fn. 4, supra) that Gildenhorn could have prevented the loss of his security only by paying off the original old trust[7] and that he would have been unwilling to invest more

6. A similar argument was made and re-jected in Sala, supra at page 582 of 81 P. 2d. See also Narberth, supra at page 152 of 190 A.

7. The record shows that Gildenhorn learned in January, 1952, that the old trust was still outstanding, and that no payments had been made on the note since he invested in the property. Thus, he was aware of Public Service's default at an early date, but apparently took no immediate steps to secure payment of the old first trust or a return to him of his money deposited in Public Service's trustee account. He did not take steps until October, 1952, to ascertain whether

the trustee account still existed at the bank: he then found it had been closed out. Furthermore, he continued to ac-cept payments on his note throughout 1952 and 1953 until foreclosure, although he knew that payments on the original and superior old trust were in default, and that foreclosure would occur. Cf. Arms & Drury v. Columbia Title Ins. Co., 1933, 62 App.D.C. 178, 65 F.2d 811. Before filing the present suit, Gildenhorn sued unsuccessfully in the District Court to set aside the foreclosure sale on the ground that the sale was held during inclement weather and that a fair bid was not obtained.

money in a defective title. But we are concerned here with the "efficient cause" of the loss that actually occurred—not with the reason why a further investment was not made to prevent that loss —and the District Court's opinion fails entirely to suggest any other basis to support its conclusion of a proximate causal connection between that loss and a title defect.

The provisions of the binder did not undertake to make Metropolitan an insurer of Gildenhorn's investment or a guarantor of its payment in full, although Gildenhorn may have desired that type of insurance. Under the binder (see fn. 5, supra) Gildenhorn was "indemnified only against such defects, liens, encumbrances as may be evidenced by the records of the District of Columbia at the date of the policy, and not against any other matters." The original unpaid trust, the foreclosure of which eliminated Gildenhorn's interest, was set out in and was excepted from the insurance coverage in the interim binder. The defect on which appellee based his suit was not disclosed in the binder and might have given a basis for recovery under the binder if in fact it had caused a loss—as by another claimant coming forward with a superior claim. But, as already shown, it had no proximate connection with the loss which did occur, and as suggested by plaintiff's witness, probably had been cured by adverse possession. Neither the later criminal acts of Public Service functioning as middleman between the fee holders and Gildenhorn, the later default by the fee holders on the old trust note, nor the later foreclosure by the senior trustee can be treated as defects or encumbrances "evidenced by the records of the District of Columbia, at the date of the policy." We find no valid theory under which there can be liability under the interim binder.

The District Court stated that it found that Gildenhorn dealt with Metro-

politan and Public Service jointly. But since the suit is based solely on loss resulting from a title defect undisclosed in the binder policy, and since the loss was not shown to have been caused by such a defect, it is unnecessary to consider whether Public Service was the agent of Metropolitan. However, we may assume for present purposes that, insofar as the title insurance dealings were concerned, Public Service was Metropolitan's agent, and that its failings in that capacity would have been chargeable to Metropolitan. But there is nothing in the evidence to show that in regard to its refinancing function Public Service was acting for or was authorized to act for Metropolitan.[8]

For these reasons, the judgment of the District Court must be

Reversed and remanded, with directions to enter judgment for appellant.

FAHY, Circuit Judge (dissenting).

I would affirm.

Proximate cause in the insurance field has been variously defined. It has been said that proximate cause referred to "the cause nearest to the loss." Again, courts have properly stated that proximate cause "does not necessarily refer to the cause nearest in point of time to the loss. But the true meaning of that maxim is, that it refers to that cause which is most nearly and essentially connected with the loss as its efficient cause."

Standard Oil Co. v. United States, 340 U.S. 54, 58, 71 S.Ct. 135, 137, 95 L.Ed. 68.

In this case the District Court found that appellee advanced the $4,000, which he lost, in reliance upon the interim binder policy. The court also concluded that the proximate cause of the loss was the failure of appellant to set forth the title defect in the interim binder policy and the failure of the Public Service

8. Indeed, Gildenhorn's counsel, who conducted the negotiations in his behalf, testified that he "thought" he was dealing with "Public Service Title Company only with respect to title," and with Metropolitan "with respect to my insurance on the title and the interim binder."

Title Company, Inc., to discharge existing outstanding liens on the properties. These and other relevant findings and conclusions I think are not clearly erroneous; that is to say, we should not hold that these factual conclusions of the trial judge are erroneous as matter of law. I think he was well within his competence in finding on the evidence that the payment made by appellee in reliance upon the mistaken representation in the interim binder policy was, in the language of the Supreme Court, the cause "most nearly and essentially connected with the loss as its efficient cause." This is so even though the foreclosure held by the majority as the proximate cause was, in point of time, "nearest to the loss." Cf. American Insurance Co. of City of Newark v. Keane, 98 U.S.App. D.C. 152, 233 F.2d 354, 360.