MARGARET A. DRISCOLL, Appellant, *v.* TITLE GUARANTEE and TRUST COMPANY, Respondent.

Supreme Court, Appellate Term, Second Department, December, 1922.

Vendor and purchaser — contract for purchase of real estate — title certificate certifying that contemplated vendor " is the owner " of lots — incumbrances — title company not liable under certificate.

Plaintiff entered into a contract to purchase two lots from a land company on the installment plan. After making her initial payment a certificate was issued to her by the defendant, at the request of the land company and was paid for by the land company, certifying that the land company " is the owner " of the lots and that when a proper deed is delivered to plaintiff the defendant will issue its guarantee policy, guaranteeing the plaintiff against all loss or damage not exceeding the purchase price, by reason of any defects of title existing at the date of the certificate. At the time the certificate was issued the property was incumbered by a mortgage which was subsequently foreclosed. The plaintiff did not complete her payments under the policy nor has any deed been delivered to her. Plaintiff seeks to recover upon the certificate. *Held,* that the land company was the owner of the property at the time the certificate was issued and the certificate being silent as to incumbrances did not render the defendant liable for any damages sustained by the plaintiff.

Even a covenant in a deed that the grantor was seized in fee simple and had a good right to convey, would not make him liable thereon, if the property was incumbered. To be liable because of the existence of liens there must be a covenant against incumbrances. Real Prop. Law, §§ 251, 253, 258.

APPEAL by plaintiff from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, first district, in favor of the defendant dismissing the complaint after a trial before the court.

*Thomas J. Farrell,* for appellant.

*Arthur P. Hilton,* for respondent.

MEMORANDUM: Judgment affirmed, with twenty-five dollars costs. Plaintiff did not enter into her contract to purchase the lots upon the installment plan, relying upon defendant's certificate. That certificate had not then been issued and plaintiff had no knowledge of it. Plaintiff did not procure it. It was issued at the request of the land company and paid for by the latter. It certified that the land company " is the owner " of the lots and that when a

proper deed of them shall be delivered by the land company to the plaintiff the defendant will issue its guarantee policy in customary form guaranteeing the plaintiff against all loss or damage not exceeding the purchase price, by reason of any defects of title, existing at the date of the certificate. Plaintiff's action is not in fraud. She seeks to recover merely upon this certificate — claiming a breach of contract. The defendant's agreement to issue its policy has not been breached. That policy was to be delivered only when plaintiff should receive her deed, and that she has never gotten, nor has she ever been entitled to it.

It is not necessary to decide whether the certification as to the ownership being in the land company, is a part of defendant's agreement to furnish a title policy, nor whether, if it be not such, it is in the nature of a search or insurance (See *Ehmer* v. *Title Guarantee & Trust Co.*, 156 N. Y. 10; *Trenton Co.* v. *Title Guarantee Co.*, 50 App. Div. 490), nor whether it was made to or for the plaintiff. Whatever it might be determined to be, the complete answer to any claim that could be based upon it is that the certification does not misstate the fact. The land company was the owner of the lots at the time the certificate was issued. The defendant certified to nothing else. There was a mortgage upon the property, but the certificate was silent as to incumbrances. No representation was made as to their presence or absence. Ownership has no reference to liens. 2 Cooley Ins. 1356, 1370. Had defendant issued its policy merely certifying that the land company owned the lots and not mentioning incumbrances, it would not be liable though the latter existed. A party taking a title policy and wishing to be protected against the existence of liens must see that the policy so provides. Even a covenant in a deed that the grantor was seized in fee simple and had good right to convey, would not make him liable thereon, if the property was incumbered. To be liable because of the existence of liens there must be a covenant against incumbrances. See Real Prop. Law, §§ 251, 253, 258. No opinion.

CROPSEY and FABER, JJ., concur.

LAZANSKY, J. (dissenting). The important question involved in this appeal is the liability of defendant under the following certificate, under seal, dated May 9, 1907, issued by it to the plaintiff:

" TITLE GUARANTEE AND TRUST COMPANY

" THIS COMPANY DOES CERTIFY, in consideration of the premium paid to it by the BAY VIEW HEIGHTS LAND COMPANY, a corporation organized under the Laws of the State of New York, that it has

examined the title of the premises known as lot Numbers 26 and 27 in Block Number 15 on Map of property of BAY VIEW HEIGHTS, Fourth Ward, situate in the Borough of Queens, City of New York, and that the said Company is the owner of said premises, and that as soon as there shall be delivered by the said BAY VIEW HEIGHTS LAND COMPANY, a proper deed of the said premises, covering the same, properly executed, acknowledged and delivered to Margaret A. Driscoll, Brooklyn, N. Y., that it will issue its Guarantee Policy in customary form, guaranteeing the grantee in said deed against all loss or damage, not exceeding the sum of Thirteen hundred ($1300.) Dollars, the purchase price of said premises, by reason of any defects of title to the said premises, existing at this date.

" *In witness whereof,* the seal of said Company is hereto affixed and the same has been signed by one of its officers.

" Dated May 9th, 1907.

          " [SEAL]                    R. P. WOODIN,
                                        " *Ass't. Manager.*"

On April 25, 1907, plaintiff, as vendee, entered into a contract with the Bay View Heights Land Company, as vendor, for the purchase and sale of two lots in Queens borough, for the sum of $1,300, payable $20 on the execution of the agreement, which was paid, and $15 on the first business day of each and every month thereafter, together with interest beginning on January 1, 1908, upon unpaid balances at the rate of five per cent per annum until the sum of $1,300 was fully paid, together with all taxes and assessments which would become a lien subsequent to the 1st day of July, 1908. The contract provided that if default be made in the payment of said installments or interest, or any of them, for a period of sixty days after it became due, or if the vendee failed to perform any other of the covenants and agreements contained in the contract, the balance of the principal sum then remaining unpaid should immediately become due and payable and all rights of the vendee under the agreement, and all right, title, interest and claim in and to the described premises should at the option of the vendor become void, terminate and be of no further effect, and the vendor released from all obligations under the contract, and all moneys theretofore paid be held as fixed and liquidated damages by the vendor; that upon the payment of the amount set forth, together with the taxes and assessments, the vendor would convey to the vendee the premises described, by full covenant warranty deed, free from all incumbrances; that the deed was to be delivered when all the terms and conditions of the contract had been complied with by the vendee, at which time a title policy of the Title

Guarantee and Trust Company was to be given to the vendee free of expense. The vendor also agreed to grade, curb and gutter the streets, lay sidewalks, water pipes and gas pipes.

Under the agreement the plaintiff made payments from April 25, 1907, to May 3, 1918, aggregating the sum of $745.24, including $15.24 for taxes. The last payment, according to the installment receipt book, was made May 3, 1918. Plaintiff was constantly in arrears and was at the time of this last payment. If she had made all her payments regularly for principal and interest, the last payment would have been made some time in 1914 or 1915. But the land company never took her default. She was notified by letter dated September 4, 1918, by the land company that by reason of a foreclosure action instituted against the company by the Thos. F. Martin Realty Company the lots which she contracted to purchase had come into the possession of the said Martin Realty Company, and that the land company had made an arrangement with the Martin Realty Company whereby, upon settlement of the balance due, as per an attached statement, she could receive a deed covering the property she contracted to purchase, and it was suggested that she arrange with the Martin Realty Company to close her account and secure a deed by a settlement of the balance shown on the statement inclosed. According to the testimony of one Thomas F. Martin, when the property was sold to the land company, a mortgage of $168,000 was taken back. This, of course, was a blanket mortgage covering this and other property. The mortgage was reduced from time to time, and when the foreclosure suit was brought $26,500 were due. The plaintiff testified that at the time she purchased the lots she did not know of any incumbrance on them; that she would not have bought the lots and paid the land company on them if she knew there was an incumbrance. The certificate from the title company, dated May 9, 1907, was received by mail after she had made a $20 payment to the land company on April twenty-fifth. She further testified that she had a conversation with somebody connected with the land company with reference to her payments, and when she stated she could not keep up with them, this person said he was perfectly satisfied. She also testified that she was about to make payments the very time she received the notice from the land company that the property had been foreclosed; that when she went to Mr. Martin in connection with the letter from the land company, he told her they could not give her a clear title and because of that he could not give her a deed. It was not disputed that the taxes from 1910 down to 1921, and a sewer assessment, altogether amounting to $145, had not been paid by the plaintiff.

Appellate Term, Second Department, December, 1922.　　[Vol. 119

There was a statement in evidence from which it appears that up to September 30, 1921, the plaintiff was in arrears for unpaid installments and interest over $1,200. At the end of the trial defendant's counsel offered on behalf of the defendant to deliver to the plaintiff a good and sufficient deed conveying the lots to her free and clear of all incumbrances, upon payment by her of the sum of $700, and also to give her a regular title policy of the defendant, insuring to her that the lots are free and clear of all incumbrances.

The theory of the complaint seems to be that the plaintiff was induced to make this contract with the land company upon the basis of this certificate and that the certificate was false and was known or should have been known to the defendant that it was false, and that the plaintiff relied upon the certificate and would not have bought the property if it had not been for this certificate. But there is no proof in the case that she relied upon this certificate as an inducing cause of the purchase of the property. It is not disputed that the certificate did not come into her hands until after she entered into the contract. There is no proof that she knew when she signed the contract that she was to receive the certificate. But the allegations of the complaint are sufficient upon which to predicate a cause of action for breach of contract. The defendant has certified to this plaintiff for a consideration paid by the land company and as a part of the transaction of the purchase of the property, as is conceded by the pleadings, that the land company was the owner of the two lots in question. The solution of the question of defendant's liability depends upon the meaning of the words " does certify " and the meaning of the word " owner." In my opinion, the defendant warranted that the land company was the owner of the premises free from incumbrances. The words " certify " and " owner " must be taken in a general and not in a technical significance. According to the Standard Dictionary one of the meanings of " certification " is, " the act of guaranteeing the truth of a statement." When the defendant certified, it guaranteed or warranted. Of course, the land company technically was the owner, no matter what the incumbrances were. There might be a mortgage in excess of the property value, and yet it would own the property in a broad sense. But that cannot be the meaning that was intended to be conveyed by this defendant and understood by plaintiff. If that were intended it would have been so stated. It must have been intended to assert that the land company held the property free and clear. It seems to me that common sense requires this holding with reference to the meaning of these words. Here was a woman who was about to buy a piece of property and pay money on it

over a period of seven years. Until the time came when she was to receive a deed, she would not know in the ordinary course of affairs of this kind, whether or not the land company had any interest in this property. In order to safeguard and secure her in respect of that, this warranty of ownership was given so that she might in additional reliance upon it pay money, secure in the thought that her future payments would be made to a company which was, as she was given to understand, the unqualified owner of real estate. She was thus given the assurance that in so far as ownership was concerned there was nothing against the property at that time which would obstruct the freedom of conveyance when that time arrived. It would make a very great difference to a purchaser, such as this plaintiff, if it were disclosed that there was a mortgage on the property. The knowledge of that fact would carry with it the suggestion of a foreclosure — a situation which developed in this case. Of course any doubt as to the meaning of these words, under a familiar rule, must be resolved in favor of the plaintiff. *Gillet* v. *Bank of America,* 160 N. Y. 549. The paper was drawn by defendant without any participation in it whatsoever by plaintiff. The land company did not own the land in the sense in which that term was used. Defendant warranted that the land company was the unqualified owner of the property. It does not make any difference that afterwards defendant was to guarantee the title. The damage was done before that time could arrive. In fact, it never did arrive because the property was foreclosed on account of a mortgage against the existence of which defendant gave its guaranty.

The next question is as to plaintiff's damages. It very clearly appears that plaintiff was in arrears in making her payments but it likewise appears that the land company had waived her defaults. Her last payment was received on May 3, 1918. Prior to that time she had been and was then in arrears. But the land company could not take money from her after defaults and then forfeit her rights without first notifying her that they would require her to pay arrears, in default of which they would take action under the terms of the contract. *Harris* v. *Troup,* 8 Paige, 422; *French* v. *Row,* 77 Hun, 380. Of course, if she had lost her rights under the contract, she could have no claim against the defendant. Although in arrears, her rights under the contract continued. Then, the land company lost the property. Of course, it was the duty of the defendant to minimize her damages as much as possible. In the letter of September 4, 1918, from the land company, it was suggested that she arrange with the purchaser in the foreclosure sale to close her account and secure a deed

by settlement of the balance shown on a statement which was inclosed. The trial court may have believed her testimony that she went to Mr. Martin, the president, and he told her that he could not make title. Her testimony in this respect was not contradicted by Martin, who was present at the trial. Furthermore, the plaintiff was entitled to warranties by the land company and was not required to take warranties from anybody else. Then, too, the contract provides that the vendor is to grade, curb and gutter the streets, lay sidewalks, water pipes and gas pipes, and there is no proof that that was done at the time of the September fourth letter. Besides, according to the contract, the plaintiff was to receive a title policy from the vendor. The letter does not suggest that such a policy would be given to her. I do not think that the defendant's offer by the answer or on the trial can be asserted in mitigation of her damages, for there is no proof that the grading, curbing and guttering of the streets, the laying of sidewalks, water pipes and gas pipes have been done. The contract of course means that that was to be done before the deed was delivered. She was not bound to take a deed until that was done and was not required to take the warranties of anybody but her vendor.

Plaintiff's damages are the amounts paid by her up to the time of the foreclosure. It is admitted by the pleadings that the certificate was issued as a part of the transaction of the purchase of the property by plaintiff. She, therefore, had the right to rely upon it in making payments in addition to her reliance upon the land company's obligation. Defendant's warranty was broken as soon as made, but the damages to plaintiff accrued thereafter, since she made her payments in reliance, in part at least, upon defendant's certificate. Even if the concession in the pleadings as stated was not made, the defendant would be liable for all except the initial payment of twenty dollars. The certificate was issued to her for a valid consideration paid by the land company to the defendant. Such a warranty, delivered after plaintiff's engagement to the land company, was an additional inducement for her to make payments to the land company. Having made these payments she is entitled to recover them from the defendant after the land company had defaulted.

The judgment should be reversed, with $25 costs, and judgment directed for plaintiff for $745.24, with interest amounting to $134.10, making a total of $879.34, with appropriate costs in the court below.

Judgment affirmed.