## Scott v. Penn Title Insurance Co.

*Paul N. Schaeffer, Forrest G. Schaeffer Jr.*, and *H. James Sautter*, for plaintiff.

*C. Wilson Austin* and *P. Herbert Reigner*, for defendant.

SHANAMAN, J., June 28, 1956.—This was assumpsit, stipulated for trial before a judge without jury.

### Findings of Fact

1. William Kinkaid in 1952 was a duly licensed real estate broker with offices in Philadelphia, and was also a duly qualified notary public.

2. Said William Kinkaid had known for at least 35 years a man whose name was J. Logan Steward, and who lived in Philadelphia.

3. Said Kinkaid knew no other person than the man residing in Philadelphia who had the name J. Logan Steward.

4. On April 3, 1952, William Kinkaid purchased 21.58 acres of land in Rockland Township, Berks County, from Paul E. Hartman and Florence Schlegel Hartman, his wife, said deed being recorded in Deed Book vol. 1093, p. 500, Berks County records.

5. William Kinkaid had the said deed to him drawn in the name of "J. Logan Steward (Single Man) of the City and County of Philadelphia and State of Pennsylvania", as grantee, and did not use his own name as grantee.

6. J. Logan Steward did not authorize or direct Kinkaid to purchase said tract of land nor did J. Logan Steward have any knowledge of said purchase during the year 1952.

7. Kinkaid did not inform Steward of said purchase.

8. Steward paid no portion of the purchase money paid by Kinkaid to the Hartmans.

9. Subsequently, without the authorization of J. Logan Steward, and without knowledge of said J. Logan Steward, Kinkaid, by deed signed "J. Logan Steward", which signature was written by Kinkaid and not by Steward, purported to convey a portion of said tract to Harold W. Neeld. Said deed is recorded in Deed Book vol. 1093, p. 501, records of Berks County.

10. Thereafter, under date of August 19, 1952, plaintiff through said Kinkaid lent $3,000 on a mortgage allegedly signed by J. Logan Steward, secured upon the balance of the premises purchased from the Hartmans and remaining after the sale to Neeld. Said mortgage was recorded in the office of the recording of deeds on August 20, 1952, in Mortgage Book vol. 745, p. 596.

11. Said mortgage was security for the payment of an accompanying bond for the payment of $3,000 within 30 days from the date thereof, to wit, August 19, 1952, and bearing interest at 6 percent per annum,

in which the name of J. Logan Steward was signed as obligor.

12. The name "J. Logan Steward" on said mortgage was written by said Kinkaid in Kinkaid's office, 423 South 16th Street, Philadelphia.

13. J. Logan Steward was not present in Kinkaid's office when Kinkaid signed said mortgage.

14. Said Kinkaid on said mortgage certified as notary public that J. Logan Steward had appeared in person before him and had acknowledged the signature, "J. Logan Steward", to be the act and deed of J. Logan Steward, and desired the same to be recorded as such.

15. J. Logan Steward did not in fact appear in person before William G. Kinkaid, notary, and acknowledge the mortgage to be his act and deed.

16. Plaintiff applied to defendant for the insurance of said mortgage.

17. At the settlement at defendant's office, Kinkaid produced the mortgage in question in which J. Logan Steward purported to be the mortgagor and plaintiff the mortgagee.

18. J. Logan Steward was not at the office of defendant upon the settlement of said mortgage transaction, knew nothing of it and had in no way authorized Kinkaid to sign his name to said mortgage.

19. J. Logan Steward received no part of the $3,000 lent by plaintiff on the faith of said mortgage and insurance policy.

20. Kinkaid received for his own use the entire proceeds of plaintiff's mortgage.

21. In consideration of defendant's charges paid to it by plaintiff, defendant issued to plaintiff its policy no. 14376, dated August 20, 1952, in the amount of $3,000, insuring to plaintiff: ". . . . the title of Assured to the estate, mortgage, or interest described in Schedule A hereto annexed, is good and marketable, and clear of all liens and incumbrances, charging the same at the date of this Policy saving such estates," etc.

22. Said policy of insurance after setting forth the description of the property recites:

"How title is vested in the Insured

| *Mortgage* | * | *($3,000.00)* J. LOGAN STEWARD TO G. ALAN SCOTT |
| *Dated* | * | August 19, 1952. |
| *Recorded* | * | August 20, 1952." |

23. The said policy under "Conditions" contained the following: "Where the liability of the Company is solely to the holder of a Policy as collateral security, such liability shall in no case exceed the amount of the pecuniary interest of such holder in the property described, nor shall such liability in any case exceed the actual value of the estate or interest insured. But if the holder hereof, as aforesaid, shall purchase such estate or interest at a public sale thereof, under foreclosure or other proceedings legally and duly conducted, the Company will approve a transfer of this Policy to such purchaser, subject to the conditions herein, with the same liability as if the said purchasers were still holding said property as collateral security as aforesaid."

24. After the giving of said mortgage, William Kinkaid sold the land covered by the mortgage to William Steudel and wife.

25. J. Logan Steward received none of the proceeds of the sale to the Steudels.

26. William Steudel and his wife, although they are the owners of the land covered by the mortgage, are not parties to the present cause of action.

27. Plaintiff has made no attempt to foreclose his mortgage, nor has he instituted any action of any kind to recover under the bond and mortgage.

28. William Kinkaid furnished the entire purchase price for the purchase of the land and used the adopted or assumed name of J. Logan Steward, not only in taking title but also in executing the bond and mortgage hereinbefore referred to.

29. William Kinkaid in his capacity as notary public took his own acknowledgment under the adopted or assumed name of J. Logan Steward on the mortgage given by him to G. Alan Scott.

30. No gift was intended by Kinkaid to Steward, or by Steward from Kinkaid, in any of the above recited transactions, and no such gift was executed.

31. Steward never owned any property in Berks County, nor visited the property in question at any time, or bought it, or mortgaged it, or sold it, or any part of it. Steward never paid or received any part of the proceeds of the original purchase in Rockland Township, or of subsequent sales and mortgage. He signed none of the purported signatures of his name, including that on the bond accompanying mortgage. Kinkaid signed them. Steward did not authorize Kinkaid to sign his name to the various documents above mentioned.

32. The mortgaged premises, now owned by William Steudel and wife, were worth about $1,250 in 1952, and are worth about $1,000 now.

33. Plaintiff has brought suit in assumpsit to no. 65 March term, 1955, against the title insurance company, for the amount of the mortgage loan, $3,000, with interest thereon from August 19, 1952, less a credit on the principal in the sum of $759.07, which plaintiff in his complaint admits was paid to him on January 4, 1955, by the Hartford Accident and Indemnity Company, as a result of court proceedings in Philadelphia County against the surety on the notary bond of William G. Kinkaid.

*Discussion*

This is not a case in which the person signing a deed as grantor or mortgagor was not in fact the owner of the parcel which he essayed to convey, nor is it a case in which such signor forged the signature of the owner.

Mr. Kinkaid, plaintiff's mortgagor, owned the property which by his mortgage he purported to transfer as a pledge and security to Mr. Scott. However, since Mr. Kinkaid had himself taken title in a fictitious name and had recorded his deed accordingly, he signed the mortgage to plaintiff, as well as the accompanying bond, not with his own name of Kinkaid, but in the fictitious name under which he held title, namely, J. Logan Steward. Clearly, this was proper in order to pass a good title of record to plaintiff; in fact it was necessary and unless so done, the title could not pass without cloud. " 'It is a fundamental principle that a man, either in his general dealings or in a particular transaction, may adopt whatever name he chooses and he will be bound accordingly': (cases) All that the law looks to is the identity of the individual and when that is ascertained and clearly established the act will be binding on him and others: . . . We think it is entirely immaterial whether the name used is purely artificial and fictitious or that of another person if the party using it is the one interested in the transaction": Coltun v. Getz, 97 Pa. Superior Ct. 591, 594.

The peculiar feature of the case arises from the fact that the fictitious name in which Mr. Kincaid had taken title was the actual name of a living human being, a resident of Philadelphia. This gentleman, Mr. John Logan Steward, testified at the trial and averred that he was entirely ignorant of the transactions of Mr. Kinkaid in regard to the land in question, had never bought it, or directly or indirectly paid for it, or sold or encumbered it or any part of it, or visited it, or executed any papers in regard to it, or authorized Mr. Kinkaid to execute such, or received any income from it. Mr. Kinkaid testified that he was using the name of J. Logan Steward, with whom he was acquainted, and that he (Kinkaid) had paid for the property with his own money. It is neither pleaded,

contended nor evidentially indicated that title taken by Mr. Kinkaid in the name of J. Logan Steward was intended by Mr. Kinkaid as a gift to Steward, or was accepted by Mr. Steward as such. The title of record, containing no apparent defect in either the deed whereby Kinkaid took title, or the subsequent mortgage to plaintiff, has in our opinion not been shown to be invalid because of Kinkaid's use of a fictitious name.

Mr. Steward, it is true, may have a grievance against Mr. Kinkaid because of an outstanding bond, which accompanied mortgage insured by defendant, and which bears the name and ostensible signature of J. Logan Steward. But plaintiff's mortgage and its lien upon the land have not been shown to be affected thereby. On the other hand, G. Alan Scott, plaintiff and holder of the bond and mortgage, may have a grievance against Mr. Kinkaid, in that the bond turns out to be the personal obligation of William G. Kinkaid, and not the obligation of J. Logan Steward. Here again, such fact does not constitute a breach of defendant's engagement, which was "that the title of the Assured to the estate, mortgage, or interest . . . is good and marketable, and clear of all liens and incumbrances, charging the same at the date of this Policy."

"The provisions of this policy did not constitute the defendant company a surety for the mortgage debt, nor a guarantor of its payment. The defendant did not undertake to insure that the property mortgaged was a sufficient security for the debt. What it did undertake to do was to indemnify against loss or damage sustained by reason of defects of title and liens upon the land": Whiteman v. Merion Title & Trust Co., 25 Pa. Superior Ct. 320, 322, quoted in Narberth Building and Loan Association v. Bryn Mawr Trust Co., 126 Pa. Superior Ct. 74, 78.

" 'The contract is one of insurance against defects in title, unmarketability, liens, and incumbrances.

. . . It must follow, as a general rule, therefore, that when the insured gets a good title the covenant of the insurer has been fulfilled, and there is no liability' ": Fifth Mutual Building Society of Manayunk's Appeal, 317 Pa. 161, 164-5.

Plaintiff has introduced the testimony of Henry L. Kalbach, dealer in real estate, that the 11.93 acres mortgaged by Mr. Kinkaid to Mrs. Scott, plaintiff, have a fair market value of $1,000, and in 1952, when sold by Mr. Kinkaid to Mr. and Mrs. Steudel, subject to the mortgage, had a fair value of $1,200 or $1,250. However, as above seen, defendant did not insure the value of the property. "Under the provisions of the policy, the title company did not become a surety or guarantor for the mortgage debt but undertook only to indemnify the insured against loss sustained by reason of defects of title": Narberth Building and Loan Association v. Bryn Mawr Trust Co., 126 Pa. Superior Ct. 74. (syllabus).

Nor has plaintiff shown loss on the mortgage. "The defendant, therefore, . . . indemnified the plaintiff against loss to her on the mortgage. That is the only liability which the defendant assumed in the policy. If there is no loss, there is no liability on the policy": Wheeler v. The Equitable Trust Co., 221 Pa. 276, 282; Whiteman v. Merion Title & Trust Co., 25 Pa. Superior Ct. 320, 323, accord.

It was incumbent upon plaintiff to establish the loss indemnified against: Fox Chase Bank v. Wayne Junction Trust Co., 258 Pa. 272, 276. ". . . if the contract were one of indemnity alone, she could not recover unless she proved a loss on the mortgage": Wheeler v. Equitable Trust Co., 206 Pa. 428, 432.

Plaintiff contends finally that Mr. Kinkaid, having in his own name as notary public taken his own acknowledgment in the name of J. Logan Steward as mortgagor, violated thereby his duty as a notary public

not to take or certify an acknowledgment in which he was an interested party, and, therefore, the mortgage is void. Although The Notary Public Law of August 21, 1953, P. L. 1323, sec. 19, 57 PS §165(e), provides that: . . . "No notary public may act as such in any transaction in which he is a party directly or pecuniarily interested", no similar clause was contained in The Notary Public Law of May 18, 1949, P. L. 1440, sec. 24, as amended by Act of June 12, 1951, P. L. 529, sec. 1, 57 PS §§143, 144, under which Mr. Kinkaid was a notary public when he acknowledged the mortgage under consideration. In the absence of statute, some conflict appears in the decisions of the appellate courts of those States in which the question has arisen as to the effect, under various circumstances, of the interest of a notary public in a transaction in which he serves. No case in Pennsylvania appears directly to rule the point.

"A defect in the acknowledgment of an instrument will not, unless the statute so provides, render it inoperative as between the parties or as against a person having actual knowledge of its existence, unless under the statute a formal acknowledgment is made essential. . . . This rule, for example, has been applied when the acknowledgment is taken before an officer whose capacity to take the acknowledgment is affected by his interest . . .": 1 C. J. S. 796.

In the present case, however, the property subject to plaintiff's mortgage has been subsequently sold to a third party, not made a party to the present proceeding. The alleged defect in the acknowledgment is not of a character that appears on the face of the mortgage. In Angier v. Schieffelin, 72 Pa. 106, where prima facie the acknowledgment was regular, the court held that the recorder was bound to record the instrument and it "was thence prima facie notice to terre-tenant of the encumbrance": id. 108.

"Latent or hidden defects in an acknowledgment do not, according to the general rule, prevent the record of an instrument from operating as constructive notice, although there is authority to the contrary. . . . Where the acknowledgment is regular on its face so that it becomes the duty of the recording officer to admit the instrument to record, its record will afford constructive notice, although there are latent or hidden defects in the acknowledgment, as, for example, where it was taken before an interested party . . .": 1 C. J. S. 799, 1 C. J. 803, note 10.

It is true that no decision in the present case could affirm the validity of the mortgage so as to bind the subsequent purchasers and present owners of the encumbered land, Mr. and Mrs. William Steudel, who are not made parties to the suit, and against whom foreclosure has not been had. But the burden of proof is on plaintiff, in his present suit for money damages against the insurer of his title, to establish its invalidity. It is plain that he has not done this, nor has he established a particular loss to himself of money arising out of such supposed invalidity. Clearly, therefore, the verdict must be for defendant.

### Conclusions of Law

1. William G. Kinkaid, having received and kept for his own use the entire proceeds of plaintiff's mortgage, was a person interested in said mortgage transaction.

2. William G. Kinkaid, named in conclusion of law 1, was the notary public who, for the purpose of recording, took the acknowledgment annexed to the mortgage wherein J. Logan Steward is the named mortgagor and G. Alan Scott is the named mortgagee, dated August 19, 1952, purporting on its face to be signed and acknowledged by J. Logan Steward, as recorded in Mortgage Book vol. 745, p. 596, Berks County records.

3. William G. Kinkaid was the owner, at the time of executing the said mortgage, of the premises therein mortgaged and held by deed dated April 3, 1952, wherein Paul E. Hartman and Florence Schlegel Hartman, his wife, were the grantors, and J. Logan Steward (single man) was the named grantee, recorded April 3, 1952, in the office of the recorder of deeds, in Berks County.

4. The name of J. Logan Steward was a fictitious name, by and under which William G. Kinkaid accepted deed and recorded it, and by and under which he executed the mortgage mentioned in conclusion of law 2.

5. Plaintiff has not shown by the fair weight of the credible evidence that the mortgage mentioned in conclusion of law 2 is not a lien upon the real estate described therein and purporting to be encumbered thereby.

6. Plaintiff has not shown by the fair weight of the credible evidence that plaintiff has suffered a pecuniary loss, or its amount, by reason of the interest of William G. Kinkaid in the premises referred to in conclusions of law 2 and 3.

7. Plaintiff has not shown by the fair weight of the credible evidence that Penn Title Insurance Company, defendant, has breached its policy of title insurance dated August 20, 1952, issued by it to G. Alan Scott, plaintiff, respecting the title of the assured as mortgagee of the property conveyed by the mortgage mentioned in conclusion of law 2.

8. Plaintiff has not shown by the fair weight of the credible evidence that defendant is indebted to plaintiff, nor the amount of such indebtedness if any.

### Verdict

And now, to wit, June 28, 1956, a verdict is entered in favor of Penn Title Insurance Company, a Pennsylvania corporation, defendant.

*Opinion Sur Exceptions*

SHANAMAN, J., October 29, 1956.—G. Alan Scott sued Penn Title Insurance Company, a Pennsylvania corporation, in assumpsit, to obtain damages upon a policy of title insurance issued by defendant to plaintiff. The parties stipulated trial to be without jury. The trial judge, after testimony and argument thereon, entered a verdict in favor of defendant, accompanied by findings of fact, discussion and conclusions of law. Plaintiff has filed exceptions to the trial judge's conclusions of law 3 to 8, inclusive, and to the court's failure to consider the mortgage in question to be void, and to the courts' interpretation of the policy of insurance. The exceptions have been argued.

The question raised is whether plaintiff's mortgage-title to the estate mortgaged was "good and marketable" as insured to him by defendant. Plaintiff contends that the mortgage was void because the mortgagor, when he bought and paid for his property, took title in the name of an existing person other than himself and, when he subsequently mortgaged the property to plaintiff, signed plaintiff's mortgage in the adopted and recorded name without authority of that person. Plaintiff charges that in so doing the mortgagor was guilty of forgery. Plaintiff also asserts the mortgage to be void because the mortgagor had in his own name, as a duly qualified notary public, acknowledged his signature to the mortgage, and had, therefore, falsely certified that the named person had appeared and acknowledged. The case of Commonwealth, etc. v. Kinkaid, 2 D. & C. 2d 325, cited by plaintiff, involved an essential difference from the present case, because in that case Irene L. Argall was not only an existing person, but owned a ground rent imposed upon the property conveyed. In that case Kinkaid forged her signature to a deed of extinguishment of

ground rent, and also forged her signature on a check given as consideration for extinguishment.

In the present case, the existing person, J. Logan Steward, whose name Kinkaid used in *receiving his own original title* and in subsequently mortgaging a part to plaintiff, had no actual connection whatever with the property or with Kinkaid's purchase of it, or with Kinkaid's subsequent mortgage of it to plaintiff. The true owner, Kinkaid, having acquired title by the deed of the Hartmans to him, though in a fictitious name then adopted by him for the transaction, has, in short, mortgaged a part of the property to plaintiff by a mortgage executed and signed by Kinkaid in the same fictitious name which he had adopted for receiving his title. This does not constitute behavior which is ordinarily regarded as a forgery, and has not been shown to be so here. Plaintiff has been and is now the holder of a mortgage given by the only person who had the power to mortgage the property described therein, namely, the actual owner, William Kinkaid.

The remaining question is whether the mortgage-title is unmarketable because of the interest of the notary public in the transaction. As the trial judge mentions in his discussion, no statutory prohibition against personal interest of a notary in a transaction certified by him existed at the time the mortgage was acknowledged and certified, although a subsequent statute now expressly forbids such interest. American courts, however, had previously, on principles of the common law, disfavored such interest and had, depending upon the facts and not in every case, invalidated acknowledgments before officials personally interested in the transactions to which they certified. In the present case, the mortgage was dated August 19, 1952, and was recorded August 20, 1952. It is duly recorded, upon the strength of an apparent acknowledgment by the owner and mortgagor, "J. Logan Steward", before

a notary public, William Kinkaid. Plaintiff has not contended or shown that Mr. Kinkaid was not a duly qualified notary. The instrument presented for recording, and the supporting acknowledgment, were apparently regular. Any defect therein was latent or hidden at the time of recording. It was the duty of the recorder of deeds to admit the instrument to record, and he did so.

Plaintiff contends, however, that the acknowledgment was ineffective, and that the mortgage-title is defeasible. It is urged upon us that Kinkaid's undeniable interest in the transaction invalidated his notarial certificate. Plaintiff cites Withers v. Baird, 7 Watts 227. In that case Baird has agreed to convey to Withers four acres which Baird, Withers and one Baxter agreed should be regarded as vested in Baxter, by virtue of a previous oral exchange of lands between Baird and Baxter. Baxter and his wife acknowledged a deed before Baird, who was a justice of the peace. Baird tendered the deed to Withers, who refused it, whereupon Baird sued Withers for the price. The court held that Withers properly rejected the tender, because Baird, being interested to obtain the price bargained to him by Withers, could not disinterestedly protect his grantee against the dower of Baxter's wife. The private examination by Baird of her, which the law then required him to conduct apart from her husband, so as to ascertain her free and unforced will and intent, could not be conducted by him impartially, because he was interested to uphold her deed. The cited case held merely that a vendee could properly refuse an obviously defective title. The court carefully pointed out that the question was not whether Baird presented an unexceptionable conveyance at trial, but whether the tender refused by Withers before suit brought was defective. Withers was not bound himself to investigate the voluntariness of Mrs. Baxter's signature, but could

demand a certification by a disinterested officer empowered to take acknowledgments. Knowing that Baird was interested, Withers could properly reject his certificate and his tender.

In the present case, the facts are quite different and raise the question whether a recorded mortgage-title on its face proper for recording, and in fact duly recorded by the sole owner of the property in the name in which he has taken title, shall after recording and at the suit of the holder of the mortgage against the insurer of the title, be declared unmarketable, because of a latent interest of the notary public who took the owner's acknowledgment in the transaction. The Withers case arose before delivery and upon tender. The present case arises after acceptance and recording. Plaintiff's mortgage, having in fact been perfect in appearance and duly recorded, creates prima facie a perfect record title: Angier v. Schieffelin, 72 Pa. 106. The essence of the notarial certificate is that the document has been executed, and that the notary knows that he is confronted by the signer, and that the signer is asserting the fact of his execution. Kinkaid did not in this case forge the name of an owner other than himself and thus swindle the owner out of his property, or the buyer of it out of his purchase money. No special circumstance of fraud, overreaching or improper advantage is shown as to this particular transaction.

"The Court: Is there some averment of fraud?

"Mr. Schaeffer: No, no averment of fraud against the company.

"The Court: Is there some averment that Mr. Kinkaid did something he should not have?

"Mr. Schaeffer: Yes, forgery. . . . We allege forgery, and we want to prove a forgery."

Forgery, being the ground relied on to invalidate the mortgage, was properly negated by the trial judge, since Kinkaid, who truly and solely owned the property,

merely signed the mortgage in the name which, in buying the property, he had adopted and recorded, as owner. Plaintiff must succeed, therefore, if at all, upon the bare legal proposition that the latent interest of the notary operates, when discovered after the recording, to render the mortgage-title unmarketable. Some authorities hold so, but the majority do not, and Pennsylvania does not: Angier v. Schieffelin, 72 Pa. 106.

The principle was laid down in 1 C. J. 773 as follows: "According to the weight of authority, where an instrument bearing a certificate of acknowledgment or proof which is regular on its face is presented to the recording officer, it becomes his duty to record it, and the record thereof will operate as constructive notice, notwithstanding there be a hidden or latent defect in the acknowledgment; but there are authorities in which a contrary view has been asserted."

". . . it is more commonly held that, where the disqualification is latent, the instrument when recorded operates as constructive notice": 1 C. J. S. 828. The remaining cases cited by plaintiff do not, in our opinion, support his contentions. We note particularly that the cited cases, Land Title Bank & Trust Company v. Cheltenham National Bank, 362 Pa. 30, and Commonwealth to use v. United States Fidelity & Guaranty Co., 364 Pa. 543, involved actual swindles by forgery. It does not become necessary to consider the further objection to plaintiff's position which the trial judge had discussed in his opinion, namely, that plaintiff is under an obligation in a suit such as this to show an actual money loss. We remark, however, that he does not appear to have shown such loss, and that such loss, under the authorities, must be shown. The exceptions must be dismissed.

And now, to wit, October 29, 1956, plaintiff's exceptions are dismissed, and judgment is entered for defendant upon the verdict.