MARIA MONTEMARANO, Respondent, *v.* HOME TITLE INSURANCE COMPANY, Appellant.

(Argued February 10, 1932; decided March 3, 1932.)

*John S. Russell* for appellant. Defendant completely performed its obligation to plaintiff. (*Empire Develop-*

*ment Co.* v. *Title Guarantee & Trust Co.*, 225 N. Y. 53; *Hadley* v. *Baxendale*, 9 Exch. 341; *Booth* v. *Spuyten Duyvil Rolling Mill Co.*, 60 N. Y. 487; *United States Trust Co.* v. *O'Brien*, 143 N. Y. 284.) The defendant is not liable for remote or consequential damages. (*Murphy* v. *United States Title Guaranty Co.*, 104 Misc. Rep. 607; *Palliser* v. *Title Ins. Co.*, 61 Misc. Rep. 490; *Trimboli* v. *Kinkel*, 226 N. Y. 147; *Roake* v. *Sullivan*, 69 Misc. Rep. 429; *Deschenes* v. *Tallman*, 248 N. Y. 33; *Grant* v. *Tallman*, 20 N. Y. 191; *Stearn* v. *Hesdorfer*, 9 Misc. Rep. 134; *Harrington* v. *Murphy*, 109 Mass. 299; *Copeland* v. *McAdory*, 100 Ala. 553.)

*Thomas W. Constable* for respondent. The loss in the agreed amount sustained under the agreed facts is particularly within the terms of the defendant's title policy. (*Murphy* v. *United States Title Guaranty Co.*, 104 Misc. Rep. 607; *Empire Development Co.* v. *Title Guaranty & Trust Co.*, 225 N. Y. 53; *Werner* v. *Wheeler*, 142 App. Div. 358; *Hillicker* v. *Rueger*, 228 N. Y. 11; *Deschenes* v. *Tallman*, 248 N. Y. 33.)

CRANE, J. The counsel in this case stipulated the following facts in writing, upon which judgment has been entered for the plaintiff. These facts are that on or about the sixth day of July, 1925, the defendant, Home Title Insurance Company, issued to the plaintiff its policy No. 104436 of title insurance, in the sum of $57,500, on three certain parcels of real property, fully described in the complaint and designated Parcels " A," " B " and " C." Thereafter the plaintiff sold Parcel B, and on February 18, 1930, contracted to sell Parcels A and C. The purchaser refused to take title to Parcel A on the ground that there was an outstanding interest to that part of the parcel lying between the southwesterly side of Old road from Flatbush to Flatlands, and to the northeasterly side of Flatbush avenue, and that title to that strip had never come into the possession of the

plaintiff and hence that she could not convey the same. This objection was valid and the plaintiff's title unmarketable for the reason stated. The closing of the title was adjourned from time to time to April 7, 1930. The defendant title company was notified of the objection to the title, and took such steps as in its opinion were necessary to remove the defect. On April 2 the title company requested the plaintiff to procure a further adjournment, but this the purchaser refused to grant, and made tender on the closing date, April 7, 1930. The next day the plaintiff notified the defendant that the purchaser had rejected title. By May 14, 1930, the defendant had cured the defect in the title, without any cost to the plaintiff, and notified the attorneys for the plaintiff of that fact. The stipulation of the attorneys in this case further states as a fact that $14,000 was the best price plaintiff could obtain from May 14, 1930, to July 3, 1930, for said Parcel A, and that the plaintiff sold the property for that price after she had first offered it to the defendant, which refused to accept it. The cost to the plaintiff of Parcel A in 1925, at the time of the issuance to her of the policy, was $22,500. The defect in the title was not listed as one of the exceptions in the policy of insurance. On the question of damage the parties have also stipulated that if it be determined that the defendant is liable to the plaintiff under the policy for other than nominal damages, the parties agree that those damages shall be fixed at the sum of $5,600 and costs.

The only point arising on this appeal is the liability of the defendant under its policy for the actual loss sustained by the plaintiff as distinguished from so-called nominal damages which are the expenses the plaintiff had to pay to her purchaser, i. e., cost of search and brokers' commissions.

We agree with the lower courts that the policy covers more than nominal damages. The terms of the policy determine the question. It reads: " This Policy of Insur-

ance Witnesseth: That the Home Title Insurance Company in consideration of the payment of its charges for the examination of title, insures Maria Montemarano, her heirs and devisees, against all loss or damage not exceeding fifty-seven thousand five hundred dollars which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A, hereto annexed, * * *." The defect in the title to the plaintiff's property, Parcel A, caused an actual loss to the plaintiff which consisted in the difference between the price she contracted to sell it for and the price she received for it after the defect was cured. This loss has been stipulated by the parties to be $5,600, so that we have no question arising here as to the elements which go to make up damage. We need not consider the difference in value between the property with, and without, the defect in title. All these elements have been eliminated by the stipulation of counsel.

The opening clause of the policy just quoted covers this loss and the plaintiff is entitled to it unless there be other provisions of the policy restricting its application.

As stated in the stipulation, the defect in title was not within the exceptions. Neither do any of the conditions apply. These provide, in substance, that the title company shall defend the insured in all actions founded on a claim of title, and that no claim for damages shall arise except where there has been a final determination in a court of competent jurisdiction, under which the insured may be dispossessed, or evicted, or an adverse claim established. No. III of section 2 of the conditions reads as follows: " (III) Where the insured shall have contracted in good faith in writing to sell the insured estate or interest, and the title has been rejected because of some defect or incumbrance not excepted in this policy, and notice in writing of such rejection shall have been given to this company within ten days thereafter. For thirty

days after receiving such notice this company shall have the option of paying the loss, of which the insured must present proper proof, or of maintaining or defending either in its own name or at its option in the name of the insured some proper action or proceeding, begun or to be begun in a court of competent jurisdiction, for the purpose of determining the validity of the objection alleged by the vendee to the title, and only in case a final determination is made in such action or proceeding, sustaining the objection to the title, shall this company be liable on this policy." This condition does not apply because the defendant did not pay the loss and it did not defend the title as against the objection of the purchaser; it acquiesced in the objection, finding it valid. There was no necessity for going to court; the decision of the defendant itself was as final as a judgment. The defendant recognized the defect and its liability, and thereupon proceeded to perfect the title. This is set forth in the stipulation. Condition 7 reads: " 7. In every case where the liability of this company has been definitely fixed in accordance with these conditions, the loss or damage shall be payable within thirty days thereafter. Provided, however, that in every case this company may demand a valuation of the insured estate or interest, to be made by three arbitrators or any two of them, one to be chosen by the insured and one by this company, and the two thus chosen selecting an umpire; and then no right of action shall accrue until thirty days after such valuation shall have been served upon this company, and the insured shall have tendered a conveyance or transfer of the insured estate or interest to a purchaser to be named by this company, at such valuation, less the amount of any incumbrance on said insured estate or interest not hereby insured against, and this company shall have failed within that time, said tender being during that time kept good to find a purchaser for the estate or interest upon such terms. * * * "

The company did not demand any valuation of the insured estate, and refused to take title to the property when tendered by the plaintiff at a valuation of $14,000. This condition does not apply. These are the only conditions which approach the question, but they do not come near enough to it to make their inapplicability even doubtful.

The numerous cases cited by the appellant, which limit damages to such loss as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, do not help it, as we consider the actual loss sustained by the plaintiff as coming within the terms of the contract which insured her against all loss sustained by reason of any defect in title. The loss occasioned by the failure to sell the property is neither speculative, contingent or remote. The stipulation admits the loss as being a very real one, due to the defect in title, and the policy covers *all* her loss. The defendant very readily could have added a few words to its contract accomplishing the limitation which it now desires to have the court read into its policy.

What we have here written has no application to those defects in title consisting of liens or incumbrances which can be satisfied by payment. Other provisions of the defendant's policy cover such outstanding claims. The title in this case was bad because of outstanding interests in the property, which had to be purchased or foreclosed.

For the reasons here stated the judgment appealed from should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.