PIONEER TITLE INSURANCE COMPANY OF NEVADA, a NEVADA CORPORATION, APPELLANT, v. INA CORPORATION, a CALIFORNIA CORPORATION, RESPONDENT.

No. 4689

April 8, 1964          391 P.2d 28

*Sidney W. Robinson,* of Reno, for Appellant.

*Bradley & Drendel,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This is a suit upon a policy of title insurance. The title insurance company (then Washoe Title Insurance Company, now Pioneer Title Insurance Company, the defendant-appellant), issued its policy in the amount of $25,000, certifying that on September 18, 1958, Ina Corporation (the plaintiff-respondent) was the owner of certain land in Lyon County, Nevada including the S½ of Sec. 13, T. 16 N., R. 23 E., MDB&M. In fact, title to the S½ of Sec. 13 was vested in the United States. The land covered by the policy embraced about 5,800.39 acres and was known as the Sario Ranch. The half section to which title failed comprised about 320 acres, though it may have been a "short" half section. Ina learned of its lack of title during the spring of 1962. Ina had joined with Dayton Land and Livestock Company to sell to Charles Steen the Sario Ranch (which Ina owned) and the 300 acre Conklin Ranch (which Dayton owned) for a total price of $200,000. The allocation of the purchase price between the co-vendors is not disclosed by the record. In connection with the sale, another title insurance company had been engaged to search title. The defect in Ina's title was discovered and Ina, Dayton and Steen were notified.

By agreement between the sellers and the buyer the purchase price was reduced by $6,400 ($20 an acre for 320 acres), and the sale completed.

Ina made demand upon the title company for $6,400. The company deemed that amount greatly to exceed the value of the 320 acres in question. The parties could not resolve their differences and this litigation ensued.

The insurance company admitted liability. The sole matter in dispute was the measure of Ina's loss. During trial, Pioneer Title offered the expert opinion of a qualified appraiser that the value of the parcel to which title had failed was $1,500. This was the only opinion evidence of value submitted. Because of this Pioneer argued that Ina's loss could not exceed $1,500. On the other hand, Ina contended that the policy insured against "loss or damage," and it was appropriate, therefore, to measure its loss by the $6,400 reduction of purchase price in the Steen transaction.[1] The trial court agreed with Ina and entered judgment in its favor for $6,400 plus costs. Pioneer Title appeals.

Pioneer presents two appellate contentions. First, it urges that where there is a complete failure of title to a portion of the property insured, the policyholder's loss or damage is limited to the value of the portion to which title failed, and may never exceed that amount. Second, assuming it is wrong on the first contention, Pioneer argues that on the present record Ina may not recover more than $3,200 (one-half of the $6,400 reduction of purchase price in the Steen transaction) because, absent an allocation of the purchase price between co-vendors (Ina and Dayton Land and Livestock), the law will presume that they are to share profits and losses equally. We do not agree with either contention.

The cases as to the measure, extent or amount of recovery on a policy of title insurance are collected at

---

[1] The policy provided, "* * * does hereby insure the parties named as Insured in Schedule A * * * against loss or damage not exceeding the amount stated in Schedule A which the Insured shall sustain by reason of:

"1. Title to the land described in Schedule A being vested, at the date hereof, otherwise than as herein stated; * * *."

60 A.L.R.2d 972. An examination of them will disclose that seldom does the error consist of a failure to discover an outstanding fee title to a part of the land insured vested in someone other than the policyholder. Most of the cases involve a mistake in other respects and may, therefore, involve somewhat different considerations in measuring the loss incurred. The case most nearly on point with the instant matter is Montemarano v. Home Title Ins. Co., 258 N.Y. 478, 180 N.E. 241. There the plaintiff did not have title to a portion of land which she had contracted to sell. The buyer rejected title. Later the title company was able to cure the defect without cost to the plaintiff, and she was able to consummate a sale to someone other than the first person with whom she had contracted to sell. It was the title company's position that, as the defect was cured, the plaintiff was limited to nominal damages, i.e., the expenses she had to pay her first purchaser, such as the cost of search, and broker's commissions. The court (Crane, Cardozo, Pound, Lehman, Kellogg, O'Brien and Hubbs) after noting that the policy provision insured against "all loss or damage" stated, "The defect in the title to the plaintiff's property, Parcel A, caused an actual loss to the plaintiff which consisted in the difference between the price she contracted to sell it for and the price she received for it after the defect was cured." Of course, in the instant case, the defect in Ina's title was not cured. The title company attempted to procure title to the S½ of Sec. 13 from the United States, but was unable to do so. Because of Ina's inability to deliver title to the S½ of Sec. 13 the purchase price was reduced by $6,400. That a loss in that amount was incurred cannot be denied. So far as the record shows, the reduction in price was negotiated in good faith. There is no suggestion of fraud, coercion or collusion. It seems to us that the loss falls squarely within the policy provision indemnifying Ina against "loss or damage." In Montemarano v. Home Title Ins. Co., supra, the plaintiff recovered her actual loss even though the title company was able to cure the defect. A fortiori,

where the title company's error could not be corrected, as in this case, the plaintiff should be treated as well.[2]

The insurance policy does not contain language limiting liability. To the contrary. It insures Ina against "loss or damage" sustained by reason of title to the S½ of Sec. 13 being vested "otherwise than as herein stated." As applied to the present case, the language means all loss incurred by Ina due to its inability to deliver title to the S½ of Sec. 13 in accordance with its agreement to do so.

Though the contractual indemnity against loss or damage may, in some cases, exceed the value of the property to which title has failed, the record in the case before us will support the conclusion that the value of the S½ of Sec. 13 was $6,400 (rather than $1,500 as contended by Pioneer Title). Surely the negotiated figure ($6,400) reached by a willing seller and a willing buyer without fraud, duress, collusion, etc., is probative of value. The trial court was not bound to prefer the opinion testimony of an appraiser. We are not aware of a rule of law requiring the trier of the fact to give greater credence to opinion evidence of value than to a negotiated figure of value reached as herein described. We hold that Pioneer Title's first contention is without merit.

The failure of the record to show an allocation between Ina and its co-vendor Dayton Land and Livestock of the purchase price received from their sale to Steen supplies the premise for the title company's second contention. It argues that, in such case, Ina and Dayton should be treated as joint owners of the net sales price and that any deduction therefrom (in this case the $6,400) must be presumed to have been shared

---

[2]The case most heavily relied upon by appellant is Demopoulos v. Title Ins. Co., 61 N.M. 254, 298 P.2d 938, 60 A.L.R.2d 969. It is not on point because it involved title insurance issued to a mortgagee rather than to an owner of property. Different considerations are present in measuring the loss. See 60 A.L.R.2d at 976. The extent to which the mortgagee's security has been impaired is the focal point.

equally. Therefore, it argues, the maximum loss sustained by Ina could not, on the record presented, be greater than $3,200, viz., one-half of the $6,400 reduction. The argument is clever, but not persuasive. Ina (not Dayton) had agreed to sell the S½ of Sec. 13 to Steen. Ina alone had the insured title to that parcel. Dayton had no claim against the title company. It was not the insured. Ina alone incurred the loss or damage indemnified against. The reduction in price was attributable only to Ina's inability to deliver title to the S½ of Sec. 13. If there was an understanding between Ina and Dayton to share the loss, the title company may not claim the benefit thereof. Its liability was fixed by the policy of title insurance, and may not be altered by an agreement, if one existed, to which it was not a party. The title company's argument in this regard must fail.

Affirmed.

BADT, C. J., and McNAMEE, J., concur.