190 So.2d 897 (1966)
RANCHER'S LIFE INSURANCE COMPANY
v.
BANKER'S FIRE & MARINE INSURANCE COMPANY OF BIRMINGHAM, ALABAMA.
No. 44057.
Supreme Court of Mississippi.
October 3, 1966.
*898 Melvin, Melvin & Melvin, Laurel, for appellant.
Howard C. Ross, Jr., Jackson, for appellee.
RODGERS, Justice:
This is a suit on a title insurance contract brought in the Chancery Court of the Second Judicial District of Jasper County, Mississippi. The chancery court decided the case in favor of the defendant and complainant appealed to this Court.
The claim arose under the following circumstances: Tim Hardy and his wife, Flossie Hardy, executed a note and trust deed to the Magnolia Sales, Inc. to secure an indebtedness due it for the construction of a house on their property. The property was described in the trust deed as "Jasper County District No. 2, Bay Springs, Mississippi, NW 1/4 of the SE 1/4 of Section 16, Township 2, Range 11."
The note and trust deed were signed by Magnolia Sales, Inc. to Lee Acceptance Corporation, who, in turn, assigned the note and trust deed to complainant, Rancher's Life Insurance Company.
The defendant-company issued a title insurance policy to protect the holder of the trust deed and its assignee against loss because of the invalidity of the lien "or by reason of title to the said land being vested at the date thereof otherwise than as herein (therein) stated." The policy insured a fee simple title in Tim Hardy and his wife, the makers of the trust deed, to the property therein described. The Hardys defaulted in the payment due under the terms of the trust deed, and the assignee, Rancher's Life Insurance Company, foreclosed the trust deed for the unpaid balance of $3,467.80.
The Rancher's Life Insurance Company became the purchaser of the land at the trustee's sale. The complainant claimed that it had lost $3,667.80 because the legal title to the land was in the State of Mississippi.
The contract of insurance contains the following paragraph: "If any Insured shall in good faith contract to sell the evidence of Indebtedness and mortgage or deed of trust described in Schedule A, or having acquired said land as in paragraph 1 hereof provided, in good faith contracts to sell the same, and any such contracts fails, or if the successful bidder at a foreclosure of trustee's sale refuses to complete the purchase, because of alleged defects in the title to said land, and in any of such events, the said title has been declared by a Court of Competent jurisdiction to be defective *899 or encumbered or otherwise unmarketable by reason of any defect, lien, or encumbrance insured against by the Policy, the Company at its option shall either (a) pay such Insured the amount of this Policy (b) purchase an (d) indebtedness, (c) establish a marketability of the title by decree of Court, or (d) otherwise save the Insured harmless. In the event of any litigation involving refusal of title because of defects insured against hereunder, the Company will, at its own cost, promptly and diligently prosecute such action as may be available to establish title as insured, and if such action is not successful, will reimburse the Insured for all costs and attorneys' fees in said litigation involving refusal of title."
The defendant-insurance-company filed its answer and admitted that it had issued the insurance contract sued on, but denied it was liable under the terms of the contract, for the reason, it is said, that the lender had notice of the defect in the title to the land at the time the insurance contract was made. It contended that the ownership of the sixteenth section land is not such a defect as was contemplated under the terms of the policy. The defendant denied that the plaintiff had been damaged because of the fact that the land was sixteenth section school land, and that the legal title was in the State of Mississippi.
The chancellor decided that although the sixteenth section land was actually a defect in the insured title, he pointed out that the insurance contract did not insure the debt; that it only insured the loss to the insured mortgage holder because of the defective title. He then held that the complainant had not suffered loss and that the leasehold was worth more than the fee simple title. He denied recovery because of the defect in the title.
The two questions to be decided here are: first, whether or not the title was defective as insured by the defendant, Banker's Fire & Marine Insurance Company of Birmingham, Alabama, and, second, what damages, if any, accrue to the insured, Rancher's Life Insurance Company.
The insurance contract undertook to insure the fee simple title to the lands described in the trust deed not to exceed the amount set out in the policy on which a premium had been paid. The policy insured the holder of the trust deed and note, that the makers were the owners of the property described in their mortgage. The makers of the trust deed were not the owners of the land insured, they had only a leasehold interest in the property. The appellee-Insurance-Company therefore owed the assignee holder of the lien such loss as it could show it had incurred by reason of the fact that the title was defective.
The title insurance company, however, contends that since the lands insured were sixteenth section lands, the Rancher's Life Insurance Company knew of the defective title, and therefore could not recover. This contention is not well-taken because there are many sixteenth sections of land in Mississippi which are not reserved school lands, and the insured had a right to rely upon the insurance contract as to the validity of the title.
The second question, as to the amount due the insured appellant, has given us considerable concern. A title insurance contract does not, as such, insure the amount of the indebtedness. It insures that the title to the property described in the lien referred to, or mentioned, in the policy, is in fact a good title, with the exceptions, if any, therein mentioned. 29A Am.Jur., Insurance § 1372 (1940). If there is a total loss of the property, the damage is the value of the property insured. 29A Am.Jur., Insurance § 1601 (1940).
If there is a partial loss of the property covered by the title insurance contract, as a result of encumbrances or encroachments, different measures of loss have been applied. In some cases it has been held that the measure of the loss is the difference *900 between the value of the property with the defective title, and its value had the title been good. Other cases have held that the proper damages because of loss was the amount required to remove the encumbrances or liens. 29A Am.Jur. Insurance § 1601 (1940).
In the case now before the Court, we have reached the conclusion that the proper method to determine the loss to the insured appellant is to subtract the value of the leasehold of the sixteenth section school land from the value of the land with fee simple title. The total of this sum cannot, however, exceed the amount of the insurance under the contract, or the amount due on the note.
We apply this formula to the evidence in the case at bar. It is apparent to us from the testimony of John Blackledge that the land would be worth $50 per acre if it were not sixteenth section school land, or a total of $2,000, and the house built on the land would be worth $2,000, so the land and improvements would be worth $4,000. As a leasehold on sixteenth section land, the property was worth only $1,200. Therefore, subtracting $1,200 from $4,000, the maximum recovery by the insured is $2,800, if insured retains title to the leasehold estate.
Mr. E.L. Short testified that the land was worth $10 to $12 per acre, or a total of $400, for the lease of the sixteenth section land, and that the land and house would ordinarily be worth $2,980. Mr. Short's testimony was based upon what he would give for the property, and was not a substantial contradiction of John Blackledge's testimony.
In the instant case, the title insurance company has the right to the salvage after payment of the full loss. This is true, not only because of the terms of the policy but in order to prevent unjust enrichment of the insured. It may elect to pay the full loss and receive the sixteenth section leasehold, or it may pay the difference between the full loss and the value of the leasehold above set out.
The proof showed without dispute that the balance due on the note secured by the deed of trust was $3,467.80 as of July 29, 1965, the day of the trial. It was shown that the value of the leasehold estate  title to which is now in appellant, because of the foreclosure  is $1,200. We therefore enter judgment here in favor of appellant, Rancher's Life Insurance Company, against the defendant, Banker's Fire & Marine Insurance Company, for $2,267.80, the difference between the amount due on the note, viz. $3,467.80, and $1,200, the value of the leasehold estate now held by appellant, plus interest at six per cent per annum from July 29, 1965.
Since the appellee is entitled to elect whether or not it will pay off the full loss and take title to the leasehold estate now vested in appellant, the mandate shall be withheld for a period of fifteen days from the date this judgment becomes final. During this time the appellee may make his election in this regard. If appellee elects to pay off the full amount, it shall tender said sum as herein determined to appellant, and appellant shall thereupon execute a proper conveyance vesting in appellee the leasehold estate. Otherwise, judgment will be entered in favor of appellant.
Reversed and judgment here for appellant.
GILLESPIE, P.J., and BRADY, PATTERSON and SMITH, JJ., concur.