**MADISON NATIONAL BANK,**
a banking corporation,
**Plaintiff,**

v.

**ST. PAUL TITLE INSURANCE COMPANY, a corporation, successor in Interest to Title Insurance Corporation of St. Louis, a corporation, Defendant,**

v.

**Carl ELLIOTT and Jane H. Elliott, Third-Party Defendants.**

**Civ. A. No. CA 73–X–804 NW.**

United States District Court,
N. D. Alabama,
Northwestern Division.

Jan. 9, 1975.

---

30. See Affidavit of Thomas Mitchell; questions of plaintiffs' attorney at Dineen pp. 55–56, 62–64.

Joe Gilliland of Bedford & Bedford, Russellville, Ala., William B. Beebe of Glassie, Pewett, Beebe & Shanks, Washington, D. C., for plaintiff.

Vincent McAlister of Almon, McAlister & Ashe, Sheffield, Ala., Julian D. Butler of Butler & Potter, Huntsville, Ala., for defendants.

## OPINION IN LIEU OF FORMAL FINDINGS

GROOMS, District Judge.

This is an action upon a title insurance policy. On the 22nd of May 1964, Carl Elliott, Sr. and his wife Jane H. Elliott executed a mortgage to the plaintiff, Madison National Bank, securing a loan of $150,000.00. The mortgage covered 571 acres in Franklin County, Alabama, in nine parcels. On the 15th day of June 1964, the defendant issued its title policy to the plaintiff whereby it insured plaintiff's security under the mortgage in a sum not exceeding $150,000.00 against loss or damage sustained by the plaintiff by reason of:

"(1) The unmarketability of the title of the mortgagor; or

"(2) Any defect in or lien or encumbrance on said title at the date hereof not shown or referred to in Schedule B or excluded from coverage in the Conditions and Stipulations; or

"(3) The priority over the mortgage at the date hereof of any lien or encumbrance not shown or referred to in Schedule B or excluded from coverage in the Conditions and Stipulations; or . . . ."

The mortgagors defaulted in their payments and on the 16th of December 1969, the plaintiff foreclosed on the mortgage, purchasing the property at its own foreclosure sale for the balance of the debt, interest and cost aggregating $165,000.00.

Five mortgages from the Elliotts on Elliott Farms, Inc. were of record antedating the mortgage to the plaintiff, no one of which was excepted from coverage in the policy.

The mortgages were as follows:

1. To Citizens Bank & Savings Company in the original amount of $17,000.00 on 2.6 acres in the NW¼ of Sec. 17.

2. To same mortgagee in the original amount of $5,000.00 on 1 acre in the NW¼ of Sec. 17.

3. To Virginia Rogers in the original amount of $3,333.33 on 1.6 acres of the 2.6 acres described in 1 above.

4. To Charles E. Tweedy in the original amount of $5,000.00 on 52.5 acres in the E½ of SE¼ of Sec. 17.

5. To Pioneer Life & Casualty, Inc. in the original amount of $20,000.00 on 56 acres in the W½ of SE¼ of Sec. 17.

The five mortgages encumbered 112.1 acres of the 571 acres. Thus 458.9 acres were unencumbered by the mortgages referred to.

On February 27, 1970, plaintiff entered into a contract with Super Stores, Inc. for the sale of the property for the sum of $125,000.00 on or before March 17, 1970, "or as soon thereafter as a report on the title can be secured." The

closing date was extended to May 17. The contract provided for $500.00 liquidated damages in the event of default by the purchaser. The sale was not consummated based upon the claim that the seller was unable to clear the title of the encumbrances.

Plaintiff gave formal written notice of default on June 25, 1970.[1]

On October 27, 1970, the two mortgages to the Citizens Bank & Savings Company were marked satisfied of record, and on January 20, 1971, the mortgage to Virginia Rogers was also marked satisfied of record.[2]

It was stipulated at the time of foreclosure that it would take $3,000.00 to satisfy the principal of the mortgage to Charles E. Tweedy. The mortgage to Pioneer Life remained unsatisfied.

After tendering the property to the defendant for $82,000, it was sold in December 1970, for that amount in two tracts to Charles Cashion, Jr. (291 acres) and John C. Bullin (280 acres). Defendant's evidence was that the ultimate sales price of $82,000.00 was the reasonable market value of the property. Its evidence also was that the reasonable market value of the property subject to the Pioneer Life mortgage was $5600.00 and that although the reasonable market value of the property covered by the Tweedy mortgage was $9625.00, it would have required only $3120.00 (interest of $120.00 from the date of foreclosure to the discovery of the defect) to have satisfied the Tweedy mortgage. Defendant contends that if in fact there was any loss the maximum recovery should be limited to the value of the property subject to the Pioneer Life mortgage and the amount required to satisfy the Tweedy mortgage, or a total of $8720.00. Plaintiff contends that it should recover an amount equal to the total balances due upon the five mortgages at the time of the foreclosure, or a total of $37,833.33.

The policy issued by the defendant provides in paragraph 3 that:

"This policy does not insure against loss or damage by reason of the following: . . .

(d) defects, liens, encumbrances, adverse claims against the title as insured or other matters . . .

(3) resulting in no loss to the insured claimant . . ."

and in paragraph 7(a):

"The liability of the company under this policy shall in no case exceed, in all, the actual loss of the insured. . . ."

while in paragraph 7(c)(1) and (3) it is provided that:

"No claim for damages shall arise or be maintainable under this policy (1) if the company, after having received notice of an alleged defect, lien or encumbrance not excepted or excluded herein, removes such defect, lien or encumbrance within a reasonable time after receipt of such notice; . . . (3) in the event the title is rejected as unmarketable because of a defect, lien or encumbrance not excepted or excluded in this policy, until there has been a final determination by a court of competent jurisdiction sustaining such rejection."

1. On September 15, 1969, plaintiff wrote defendant a letter advising it of the foreclosure proceedings and stating that it had been informed by counsel that there were two prior mortgages aggregating $34,000.00. One of these was the Pioneer Life mortgage for $20,000.00. The Court is unable to positively identify the other. It was referred to as being recorded in Book 358 at page 170 and covering 80 acres in Sec. 20. The abstract shows a $14,000.00 mortgage on 30 acres in Sec. 20 and 52 acres in Sec. 17. Any sum due thereon does not appear to be encompassed in plaintiff's claim of outstanding prior liens.

2. By letter of September 26, 1969, defendant replied that the mortgage in Book 358 at page 170, and the mortgage in Book 347 at page 177 had been released of record. The abstract does not appear to reveal a mortgage found in Book 347 at page 177. By letter of July 6, 1970, defendant informed plaintiff that it secured the release of three described prior mortgages as to which plaintiff makes no issue.

The defendant contends that plaintiff recovered the full value of the property on the sale and that under paragraphs 3(d)(3) and 7(a) it is not entitled to recover any sum, but if entitled to damages, the amount should be limited to the sum of $8720.00 as above indicated.

Defendant's contention that because the prior liens do not cover all of the insured property plaintiff's loss should be measured as the difference between the market value of that portion of the insured property encumbered by prior liens and the market value of such portion if it had been unencumbered, cannot be sustained.

The policy insured that the whole title was marketable and not just the title to a part of the property. There was but one loan, one mortgage securing that loan, and one title policy insuring the marketability of the title. The courts have articulated the test that speaks in terms of liability of the insurer as to the marketability of the whole and not just a part of the property. See Beaullieu v. Atlanta Title & Trust Co., 60 Ga. App. 400, 4 S.E.2d 78; Glyn v. Title Guarantee & Trust Co., 132 App.Div. 859, 117 N.Y.S. 424, 428; Burks v. Louisville Title Ins. Co., 95 Ohio App. 509, 121 N.E.2d 94.

There is an extensive note in 60 A.L. R.2d pages 972 et seq., dealing with the measure, extent, or amount of recovery on the breach of a policy of title insurance. No Alabama cases are cited therein, and research has failed to reveal that the Alabama Appellate courts have spoken on the subject.

The Supreme Court of Mississippi in Rancher's Life Insurance Co. v. Banker's Fire & Marine Insurance Co. of Birmingham, Ala., 190 So.2d 897, appears to have correctly summarized the holdings and noted the divergence in the rules as to damages due the mortgagee on a breach of the policy where there has been a partial loss, saying:

"If there is a total loss of the property, the damage is the value of the property insured. 29A Am.Jur., Insurance § 1601 (1940).

"If there is a partial loss of the property covered by the title insurance contract, as a result of encumbrances or encroachments, different measures of loss have been applied. In some cases it has been held that the measure of the loss is the difference between the value of the property with the defective title, and its value had the title been good. Other cases have held that the proper damages because of loss was the amount required to remove the encumbrances or liens. 29A Am.Jur. Insurance § 1601 (1940)."

Citing Minnesota Title Ins. & Trust Company v. Drexel, C.A.8, 70 F. 194; Atlanta Title & Trust Co. v. Allied Mortgage Company, 64 Ga.App. 38, 12 S.E.2d 147, and Title Insurance Company v. Industrial Bank of Richmond, 156 Va. 322, 157 S.E. 710; 44 Am.Jur.2nd (1969) Insurance § 1699, states that:

"A mortgagee's recovery for a partial loss occasioned by an undisclosed prior lien is generally the amount of the lien."

The Court is of the opinion that in the absence of Alabama authority the rule generally applicable should be followed in this case.

 The Court finds that there was a bona fide contract of sale of the property (and not an option[3]) for $125,000 which continued in existence until May 17, 1970. Seven months later the property was sold, after a tender to the defendant, for $82,000.00—a difference of $43,000.00.[4] The failure of the seller to

---

3. See McGuire v. Andre, 259 Ala. 109, 65 So.2d 185, distinguishing a contract of sale from an option.

4. See Flockhart Foundry Co. v. Fidelity Union Trust Co., 102 N.J.L. 405, 132 A. 493, where it was held that the date of a bona fide contract of sale was the date as of which the value of the property should be determined when the sale was not consummated because of a defect in the title, and Montemarano v. Home Title Ins. Co., 258

procure a title free from encumbrances prevented the consummation of the sale and adversely affected the value of the property and the security of the mortgage to the extent of the balance due on the prior mortgages. The ultimate liability of the defendant for such loss depends upon the amount of the liens removed within a reasonable time after notice.

The insured did not receive final notice of loss until June 25, 1970, a date subsequent to the termination date of the contract of sale. Under the terms of the policy (¶ 7(c)(1)) the defendant had a reasonable time thereafter to "remove such defect, lien or encumbrance." The defendant obtained a satisfaction of record of the two mortgages to the Citizens Bank & Savings Company on October 27, 1970. The Court finds that those liens were removed within a reasonable time and were not outstanding on the date of the final sale.

The satisfaction of record of the mortgage to Virginia Rogers was not obtained until January 20, 1970, a date after the sale, and was not removed within a reasonable time. $3,333.33 was due on that mortgage. The Pioneer Life mortgage of $20,000.00 and the Tweedy mortgage of $3120.00 remained unsatisfied. The three mortgages total $26,453.33. It would have required that amount to have satisfied those mortgages if they had been satisfied within a reasonable time. Plaintiff is entitled to recover that sum.

■ Although the matter was mentioned in oral argument, defendant does not brief the issue tendered by the "no action" clause (7(c)(3)). Since defendant denied liability, its contention is without merit. United Services Automobile Association v. Russom, 5 Cir., 241 F.2d 296.

A judgment will be entered pursuant to this opinion.

N.Y. 478, 180 N.E. 241, where the court held that the actual loss consisted of the difference between the price at which the seller had contracted to sell and the price the sell-er received for the property after the defect was cured. Also, Murphy v. United States Title Guaranty Co., 104 Misc. 607, 172 N.Y. S. 243, to like effect.